### In re SEALED CASE.

**Misc. No. 87–0139.**

United States District Court, District of Columbia.

July 10, 1987.

Brendan V. Sullivan, Jr., Terrence O'Donnell, Barry S. Simon and Nicole K. Seligman, Williams & Connolly, Washington, D.C., for movant.

Paul L. Friedman, Guy Miller Struve, James E. McCollum, Jr. and Jeffrey Toobin, Office of Independent Counsel, Washington, D.C., for respondent.

Richard K. Williard, Asst. Atty. Gen., Joseph diGenova, U.S. Atty., James M. Spears, Deputy Asst. Atty. Gen., David J. Anderson and Thomas Millet, Civil Div., Dept. of Justice, Washington, D.C., for amicus curiae.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., Chief Judge.

Lt. Col. North, Movant in this matter, challenges the authority of Lawrence E. Walsh and his associates to issue subpoenas and conduct proceedings before the grand jury investigating what has become known to the public as the Iran/Contra Affair. His Motion challenges the constitutionality of the Ethics in Government Act, 28 U.S.C. §§ 49, 591–598 (1982 & Supp. III 1985) (the Act), under which this Office of the Independent Counsel was originally created, and alleges infirmities with the parallel appointment of Mr. Walsh to the Office of Independent Counsel: Iran/Contra by the Attorney General. *See,* 52 Fed. Reg. 7270 (1987) (to be codified at 28 C.F.R. Parts 600 and 601). The United States Court of Appeals for the District of Columbia Circuit decided on June 8, 1987 that Movant's challenges are ripe for review. *In Re Sealed Case,* 827 F.2d 776 (D.C.Cir. 1987) (per curiam).

In the Order remanding this matter, the Court of Appeals instructed:

> Because the judiciary should rule on the constitutionality of an Act of Congress only as a last resort, the district court must determine whether this case can be resolved on other grounds. In this respect the district court should first consider, taking testimony as appropriate, (1) whether the Attorney General has legal authority to delegate the powers which he purported to convey in the regulation set out at 52 Fed.Reg. 7270 (1987) (to be codified at 28 C.F.R. Parts 600 and 601), and if so, whether appropriate authority has been properly vested in Mr. Walsh and his associates; and
>
> (2) whether any aspect of the relationship between the special division of this court and the Independent Counsel requires consideration of the constitutionality of the statute even if the Attorney General's appointment is otherwise valid.

Upon consideration of the evidence on these matters in the form of relevant documents and an affidavit from Associate Counsel Guy Miller Struve, this Court has determined that the parallel appointment of Mr. Walsh under the Attorney General's regulation was factually and legally valid and that appropriate authority has been vested in him and his associates. It is also determined that the limited relationship between the Special Division of the Court of Appeals for this Circuit and the Office of the Independent Counsel does not require consideration of the constitutionality of the act.

### *The Attorney General's Regulation*
### *The Attorney General's Authority to Promulgate the Regulation*

On March 5, 1987, the Attorney General promulgated a regulation creating an Office of Independent Counsel: Iran/Contra,

defining its general powers and setting its jurisdiction.[1] He relied on "the authority vested in (him) by 28 U.S.C. §§ 509,[2] 510,[3] and 515,[4] and 5 U.S.C. § 301,[5] and ... the President's general responsibility to enforce the laws of the United States pursuant to Article II of the United States Constitution." 52 Fed.Reg. 7270, 7271 (March 10, 1987).

■ The first question raised in this matter is whether the Attorney General had the authority to seek assistance from an Independent Counsel in the function of his official duties. The Court need not prolong the discussion of this issue as the Supreme Court acknowledged in *Nixon v. United States*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), that the Attorney General has such authority. In discussing the regulation issued by the Attorney General which appointed the Watergate Special Prosecutor,[6] the Court wrote:

> Under the authority of Art. II, § 2, Congress has vested in the Attorney General the power to conduct the criminal litigation of the United Stated Government.

28 U.S.C. § 516. It has also vested in him the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. §§ 509, 510, 515, 533. Acting pursuant to these statutes, the Attorney General has delegated the authority to represent the United States in these particular matters to a Special Prosecutor with unique authority and tenure.

*Id.* at 694, 94 S.Ct. at 3100. The authority and independence of the Watergate Special prosecutor was almost identical to that enjoyed by Mr. Walsh. Similarly, in *Nader v. Bork*, 366 F.Supp. 104 (D.D.C.1973) the Court accepted that "the Attorney General derived his authority to hire (Special Prosecutor Archibald) Cox and to fix his term of service from various Acts of Congress". *Id.* at 108 (citing 5 U.S.C. § 301; 28 U.S.C. §§ 509–510). Although the Independent Counsel alleges other sources of the authority for the promulgation of the regulation, only the statutes expressly relied on by the Attorney General confer such power.[7]

1. The regulation is attached hereto as exhibit 1.

2. § 509. Functions of the Attorney General
   All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General ...

3. § 510. Delegation of authority
   The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

4. § 515. Authority for legal proceedings; commission, oath and salary for special attorneys.
   (a) The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.
   (b) Each attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law. Foreign counsel employed in special cases are not required to take the oath. The attorney General shall fix the annual salary of a special assistant or special attorney at not more than $12,000.

5. § 301. Department regulations
   The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

6. 38 Fed.Reg. 14688 (1973).

7. The Independent Counsel contends that Article II of the United States Constitution and "the Congressional intent manifested in the Ethics in Government Act" confer authority on the Attorney General to make the parallel appointment. It is clear that neither of these sources gives the Attorney General the power to create a new agency.
   When the true source of the Attorney General's authority is recognized, as 28 U.S.C. §§ 509, 510, and 515 and 5 U.S.C. § 301, it is clear that the Office of Independent Counsel: Iran/Contra is within the Department of Justice, although it has the same degree of independence from the

■ Even in light of the above-cited precedent, Lt. Col. North argues that the Attorney General's regulation is unconstitutional because it limits the power of the Attorney General and the President to remove Mr. Walsh without cause. According to the regulation,

"An Independent Counsel appointed under this chapter may be removed from office, other than by impeachment and conviction, only by the personal action of the Attorney General and only for good cause, physical disability, mental incapacity or any other condition that substantially impairs the performance of the Independent Counsel's duties."

52 Fed.Reg. 7270, 7272. This contention has also been addressed by the Supreme Court and this District Court. As the Court noted in *Nader v. Bork, supra,* when it found the firing of Archibald Cox illegal as a violation of the Attorney General's regulation, "the Supreme Court has twice held that an Executive Department may not discharge one of its officers in a manner inconsistent with its own regulations concerning such discharge." 366 F.Supp. at 108 (citing *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). In this case, like in *Nader,* the Attorney General has voluntarily limited the discretion of the Executive Branch to remove officials at will. This action does not violate the Constitution.

■ Once it is determined that the Attorney General may appoint an Independent Counsel to assist him in the execution of his duties, the focus of the Court's inquiry must turn to the specific facts of this case. Here, the Attorney General appointed as Independent Counsel to investigate the Iran/Contra affair the same individual who was already serving in the same capacity under the Ethics in Government Act. Lt. Col. North asserts that this appointment violates section 597(a) of the Act which provides:

other components of the Department of Justice as the Office of Independent Counsel described

Whenever a matter is in the prosecutorial jurisdiction of a independent counsel or has been accepted by a independent counsel under section 594(e) of this title, the Department of Justice shall suspend all investigations and proceedings regarding such matter, except to the extent required by section 594(d) of this title, and except insofar as such independent counsel agrees in writing that such investigation or proceedings may be continued by the Department of Justice.

Although the Office of Independent Counsel: Iran/Contra must be within the Department of Justice given the source of the Attorney General's authority to promulgate the regulation, the appointment of Mr. Walsh does not violate § 597(a). Attached as Exhibit 5 to the Memorandum of Independent Counsel is the Appointment Affidavit of Mr. Walsh as Independent Counsel under the regulation. Mr. Walsh's signature on this form indicates that he, although Independent Counsel under the Ethics in Government Act, consented to the Attorney General's appointment of him as Independent Counsel under the regulation. Mr. Walsh knew that the scope of his authority, the degree of his independence, and the particulars of his office under the regulation are identical with those under the Ethics in Government Act. Although he believed his new office to be outside the Department of Justice, his acceptance of the appointment under the regulation indicated his consent to the precise set of duties and relationships described in the regulation. His execution of the appointment affidavit, therefore, satisfied the requirements of 28 U.S.C. § 597(a).

*The Vesting of Authority Under the Regulation in Mr. Walsh and His Associates*

Although the Court has held above that nothing in the Constitution or Statutes of the United States bars the appointment of Independent Counsel: Iran/Contra, the Court must determine whether this authority was properly vested in Mr. Walsh and his associates.

in the Ethics in Government Act.

■ Lt. Col. North makes only one argument that Mr. Walsh himself was not properly vested with authority under the regulation—that he could not accept the position because he did not understand that his office would be within the Department of Justice. As stated above, Mr. Walsh was aware of the particulars of his new office when he accepted it. His misconception of where the office was located within the Executive Branch, therefore, did not negate his express acceptance of the appointment. Mr. Walsh's authority under the regulation is clear.

■ A more difficult question concerns the validity of Mr. Walsh's appointments of associate Independent Counsel.[8] The record is clear that none of Mr. Walsh's associates executed affidavits pursuant to their appointments under the Attorney General's regulation. Attached as Exhibit 3 to the Independent Counsel's memorandum, however, are the affidavits executed by associate counsel pursuant to their appointments by Mr. Walsh under the Ethics in Government Act.

Under usual circumstances, appointment documents executed with regard to one position do not satisfy the requirements of appointment under another position. In this case, however, the duties, obligations and limitations of the two positions are identical. Additionally, the same individual was vested with authority to make the appointments under the regulations and the Act. New appointment documents therefore, would have served no purpose, as associate counsel had already made the necessary representations and were bound to their responsibilities under the first set of forms. Given the unique set of circumstances involved in this matter, including Mr. Walsh's execution of an appointment affidavit under the regulation, the Court

concludes that associate counsel were also properly vested with authority under the Attorney General's regulation.[9]

### The Special Court

As previously noted, the Court of Appeals instructed this Court to determine whether any aspect of the relationship between the special division of the Court of Appeals and the Independent Counsel requires consideration of the constitutionality of the Act. The Court concludes that it does not.

The Court has accepted an affidavit from Associate Independent Counsel Guy Miller Struve which outlines the contacts between the Independent Counsel and the Special Court. This affidavit makes clear that the Special Court has in no way interfered with the grand jury investigation at issue in this matter.

Turning to the provisions of the Act and the regulation regarding the Special Court, it is plain that they are extremely limited. First, under 28 U.S.C. § 592(c), the Special Division appoints the Independent Counsel at the request of the Attorney General. Because the Attorney General in this case chose to appoint the same individual under the regulation, the Court need not address the constitutionality of the appointment provision of the Act. With regard to the other provisions of the Act and the Regulation regarding the Special Division, none of them in any way involve the Court in the conduct of the grand jury's investigation. 28 U.S.C. § 595(b) and § 600.2(b) of the regulation impose a requirement on the Independent Counsel that it file a report with the Special Division. Pursuant to 28 U.S.C. § 596(b)(2), the Special Division may terminate the Office of Independent Counsel upon completion of its assigned tasks. Under 28 U.S.C. § 596(a)(3) and § 600.3(a)

---

8. Mr. Walsh had the authority to hire associate counsel pursuant to § 600.1(c) of the regulation (set forth at 52 Fed.Reg. at 7271).

9. The manner in which the Office of Independent Counsel signed subpoenas and other documents during the course of this investigation is irrelevant to the determination of whether authority was properly vested in and used by Mr. Walsh and his associates under the regulation.

Each action taken by Mr. Walsh and his associates could have been taken under the regulation or the Act. That the Independent Counsel's office chose to consistently use the label assigned to it under the Act does not belie the Independent Counsel's assertion that every official action of his office was taken under both the Act and the regulation.

of the regulation, the Special Division may review the Attorney General's decision to remove the Independent Counsel. (Under § 600.3(a)(2) of the regulation, the Attorney General must submit a report to the Special Division specifying the grounds for the removal of the Independent Counsel. Any court of competent jurisdiction may hear the Independent Counsel's case that he was wrongfully removed.) Finally, the Court has jurisdiction to grant attorneys' fees to certain subjects of an Independent Counsel's investigation under 28 U.S.C. § 593(g). Because none of these limited powers of the Special Court impermissably involve it in the criminal investigation by the Independent Counsel, the Court finds it unnecessary at this time to consider the constitutionality of the Ethics in Government Act.

An appropriate Order accompanies this Memorandum. The Clerk shall file this Order under seal as it contains matters occurring before the grand jury. *See,* Fed. R.Crim.P. 6(e); Local Rule 302.

## EXHIBIT I

product) to be used in the prevention or treatment of a tropical disease:

(1) For human drugs assigned to their respective organizations:

(i) The Director and Deputy Director, CDB.

(ii) The Director and Deputy Director, Office of Biologics Research and Review, CDB.

(iii) The Director and Deputy Director, Office of Drug Research and Review, CDB.

(iv) The Director and Deputy Director, Office of Compliance, CDB.

(2) For veterinary drugs subject to their jurisdiction:

(i) The Director and Deputy Director, CVM.

(ii) The Director and Deputy Director, Office of New Animal Drug Evaluation, CVM.

(c) The following officials are authorized, under section 351(h) of the Public Health Service Act, to approve or disapprove an application to export a partially processed biological product:

(1) The Director and Deputy Director, CDB.

(2) The Director and Deputy Director, Office of Biologics Research and Review, CDB.

(3) The Director and Deputy Director, Office of Compliance, CDB.

Dated: March 3, 1987.

John M. Taylor,

*Associate Commissioner for Regulatory Affairs.*

[FR Doc. 87–4934 Filed 3–9–87; 8:45 am]

**BILLING CODE 4160-01-M**

---

## DEPARTMENT OF JUSTICE

### Drug Enforcement Administration

### 21 CFR Part 1308

**Schedules of Controlled Substances; Extension of Temporary Placement of Para-fluorofentanyl into Schedule I**

**AGENCY:** Drug Enforcement Administration, Justice.

**ACTION:** Final rule.

**SUMMARY:** This final rule is issued by the Administrator of the Drug Enforcement Administration (DEA) to extend the temporary scheduling of the narcotic substance para-fluorofentanyl in Schedule I of the Controlled Substances Act (CSA) (21 U.S.C. 801, et seq.). The temporary scheduling of para-fluorofentanyl is due to expire on March 10, 1987. This notice will extend the temporary scheduling of para-fluorofentanyl for six months or until rulemaking proceedings pursuant to 21

U.S.C. 811(a) are completed, whichever occurs first.

**EFFECTIVE DATE:** March 10, 1987.

**FOR FURTHER INFORMATION CONTACT:** Howard McClain, Jr., Chief, Drug Control Section, Drug Enforcement Administration, Washington, DC 20537, Telephone: (202) 633–1366.

**SUPPLEMENTARY INFORMATION:** On February 7, 1986, the Administrator of the Drug Enforcement Administration issued a final rule in the Federal Register (51 FR 4722) amending § 1308.11(g) of Title 21 of the Code of Federal Regulations to temporarily place *N*-(fluorophenyl)-*N*-[1-(2-phenylethyl)-4-piperidyl] propanamide or para-fluorofentanyl into Schedule I of the Controlled Substances Act pursuant to the provisions of 21 U.S.C. 811(h). The final rule which became effective on March 10, 1986 was based on a finding by the Administrator that the emergency scheduling of para-fluorofentanyl was necessary to avoid an imminent hazard to the public safety.

Section 201(h)(2) of the CSA (21 U.S.C. 811(h)(2)) requires that the emergency scheduling of a substance expires at the end of one year from the effective date of the order. However, during the pendency of proceedings under 21 U.S.C. 811(a)(1) with respect to the substance, temporary scheduling of that substance may be extended for up to six months. Proceedings for the scheduling of the substance under 21 U.S.C. 811(a) may be initiated by the Attorney General (delegated to the Administrator of DEA pursuant to 28 CFR 0.100) on his own motion, at the request of the Secretary of the Department of Health and Human Services, or on the petition of any interested party. Such proceedings regarding para-fluorofentanyl have been initiated by the Administrator.

Therefore, the temporary scheduling of para-fluorofentanyl which is due to expire on March 10, 1987, may be extended until September 10, 1987, or until proceedings initiated in accordance with 21 U.S.C. 811(a) are completed, whichever occurs first.

Pursuant to 21 U.S.C. 811(h)(2) the Administrator hereby orders that the temporary control of para-fluorofentanyl in Schedule I of the CSA be extended until September 10, 1987 or until the conclusion of proceedings initiated in accordance with U.S.C. 811(a), whichever occurs first.

Pursuant to Title 5, United States Code, section 605(b), the Administrator certifies that the extended scheduling of para-fluorofentanyl in Schedule I of the Controlled Substances Act will have no impact upon small businesses or other entities whose interests must be

considered under the Regulatory Flexibility Act (Pub. L. 96–354). Para-fluorofentanyl has no legitimate use or manufacturer in the United States.

It has been determined that the extension of the temporary placement of para-fluorofentanyl in Schedule I of the CSA in accordance with the emergency scheduling provisions is a statutory exception to the requirements of Executive Order 12291 (46 FR 13193).

**List of Subjects in 21 CFR Part 1308**

Administrative practice and procedure, Drug traffic control, Narcotics, Prescription drugs.

Dated: March 6, 1987.

John C. Lawn,

*Administrator, Drug Enforcement Administration.*

[FR Doc. 87–5089 Filed 3–9–87; 8:45 am]

**BILLING CODE 4410-09-M**

---

### 28 CFR Parts 600 and 601

**Offices of Independent Counsel; General Powers and Establishment of Independent Counsel—Iran/Contra**

**AGENCY:** United States Department of Justice.

**ACTION:** Final rule.

**SUMMARY:** This rule establishes an Office of Independent Counsel: Iran/Contra, to be headed by an Independent Counsel. This Office is to be established pursuant to the Attorney General's statutory authority, found in 28 U.S.C. 509, 510, and 515, and 5 U.S.C. 301, and pursuant to the President's general responsibility to enforce the laws of the United States pursuant to Article II of the United States Constitution. This authority is being exercised because of the pending lawsuit captioned *North* v. *Walsh and Meese,* D.D.C. No. 87–0457, which challenges the constitutionality of the appointment and activities of the Independent Counsel named pursuant to the Ethics in Government Act (28 U.S.C. 591 *et seq.*). The President has made clear that he supports a full investigation into the events that the Independent Counsel has been charged with investigating under that Act. In addition, I note that I have already determined that this matter is appropriate for further investigation. In light of the President's views, I have found it advisable to assure the courts, Congress, and the American people that this investigation will proceed in a clearly authorized and constitutionally valid form regardless of the eventual outcome of the *North* litigation. Thus, this rule is not meant to question the

independence or authority of the Independent Counsel appointed under the Act or to interfere in any way with his activities. To the contrary, this rule is intended to make certain that the necessary investigation and appropriate legal proceedings can proceed in a timely manner.

**EFFECTIVE DATE:** March 5, 1987.

**FOR FURTHER INFORMATION CONTACT:** Thomas Barba, Counselor to the Assistant Attorney General, Civil Division, Room 3607, U.S. Department of Justice, 10th Street and Pennsylvania Avenue, NW., Washington, DC 20530. Telephone: (202) 633–5713. This is not a toll-free number.

**List of Subjects in 28 CFR Parts 600 and 601**

Crime, Conflict of interests, Foreign Relations, Government employees, Arms and munitions, Military personnel, National Defense, Authority delegations (Government agencies).

By the authority vested in me by 28 U.S.C. 509, 510, and 515, and 5 U.S.C. 301, and pursuant to the President's general responsibility to enforce the laws of the United States pursuant to Article II of the United States Constitution, Title 28, Code of Federal Regulations, is amended as follows:

**CHAPTER V—OFFICES OF INDEPENDENT COUNSEL**

1. A new Chapter VI, entitled "Offices of Independent Counsel," is added immediately after Chapter V.

2. A new Part 600 is added as the first Part of Chapter VI, to read as follows:

**PART 600—GENERAL POWERS OF INDEPENDENT COUNSEL**

Sec.
600.1    Authority and duties of an Independent Counsel.
600.2    Reporting and congressional oversight.
600.3    Removal of an Independent Counsel; termination of office.
600.4    Relationship with components of the Department of Justice.
600.5    Savings provision; severability.

Authority: 28 U.S.C. 509, 510, and 515; 5 U.S.C. 301; Article II of the United States Constitution.

**§ 600.1    Authority and duties of an Independent Counsel.**

(a) An Office of Independent Counsel shall be under the direction of an Independent Counsel appointed by the Attorney General. An Independent Counsel shall have, with respect to all matters in his prosecutorial jurisdiction established under this chapter, full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice, the Attorney

General, and any other officer or employee of the Department of Justice, except that the Attorney General shall exercise direction or control as to those matters that specifically require the Attorney General's personal action under section 2516 of Title 18 of the United States Code. Such investigative and prosecutorial functions and powers shall include—

(1) Conducting proceedings before grand juries and other investigations;

(2) Participating in court proceedings and engaging in any litigation, including civil and criminal matters, that such Independent Counsel deems necessary;

(3) Appealing any decision of a court in any case or proceeding in which such Independent Counsel participates in an official capacity;

(4) Reviewing all documentary evidence available from any source;

(5) Determining whether to contest the assertion of any testimonial privilege;

(6) Receiving appropriate national security clearances and, if necessary, contesting in court (including, where appropriate, participating in camera proceedings) any claim of privilege or attempt to withhold evidence on grounds of national security;

(7) Making applications to any Federal court for a grant of immunity to any witness, consistent with applicable statutory requirements, or for warrants, subpoenas, or other court orders, and, for purposes of sections 6003, 6004, and 6005 of Title 18 of the United States Code, exercising the authority vested in a United States or the Attorney General;

(8) Inspecting, obtaining, or using the original or a copy of any tax return, in accordance with the applicable statutes and regulations, and, for purposes of section 6103 of the Internal Revenue Code of 1954, and the regulations issued thereunder, exercising the powers vested in a United States attorney or the Attorney General; and

(9) Initiating and conducting prosecutions in any court of competent jurisdiction, framing and signing indictments, filing information, and handling all aspects of any case in the name of the United States; and

(10) Consulting with the United States Attorney for the district in which the violation was alleged to have occurred.

(b) An Independent Counsel appointed under this chapter shall receive compensation at a per diem rate equal to the annual rate of basic pay for level IV of the Executive Schedule under section 5315 of Title 5 of the United States Code. This subsection shall not be construed to authorize the payment of any compensation in addition to that paid under subsection (b) of section 594 of Title 28 of the United States Code.

(c) For the purposes of carrying out the duties of the Office of Independent Counsel, an Independent Counsel shall have power to appoint, fix the compensation, and assign the duties, of such employees as the Independent Counsel deems necessary (including investigators, attorneys, and part-time consultants). The positions of all such employees are exempted from the competitive service. No such employee may be compensated at a rate exceeding the maximum rate provided for GS–18 of the General Schedule under section 5332 of Title 5 of the United States Code. This subsection shall not be construed to authorize the payment of any compensation in addition to that paid under subsection (c) of section 594 of Title 28 of the United States Code.

(d) An Independent Counsel may request assistance from the Department of Justice, and the Department of Justice shall provide that assistance, which may include access to any records, files, or other materials relevant to matters within the Independent Counsel's prosecutorial jurisdiction, and the use of the resources and personnel necessary to perform the Independent Counsel's duties.

(e) An Independent Counsel may ask the Attorney General to refer matters related to the Independent Counsel's prosecutorial jurisdiction. An Independent Counsel may accept referral of a matter by the Attorney General, if the matter relates to a matter within the Independent Counsel's prosecutorial jurisdiction as established by this chapter. If such a referral is accepted, an Independent Counsel shall notify the division of the United States Court of Appeals for the District of Columbia referred to in section 49 of Title 28 of the United States Code, if such court exists at that time.

(f) An Independent Counsel shall, except where not possible, comply with the written or other established policies of the Department of Justice respecting enforcement of the criminal laws.

(g) An Independent Counsel shall have full authority to dismiss matters within his prosecutorial jurisdiction without conducting an investigation or at any subsequent time prior to prosecution if to do so would be consistent with the written or other established policies of the Department of Justice with respect to the enforcement of criminal laws.

**§ 600.2    Reporting and congressional oversight.**

(a) An Independent Counsel appointed under this chapter may make public from time to time, and shall send .

to the Congress statements or reports on the activities of the Independent Counsel. These statements and reports shall contain such information as the Independent Counsel deems appropriate.

(b)(1) In addition to any reports made under paragraph (a) of this section, and before the termination of the Independent Counsel's office under this chapter, such Independent Counsel shall submit to the division of the United States Court of Appeals for the District of Columbia referred to in section 49 of Title 28 of the United States Code, if such court exists at that time, a report under this section.

(2) A report under this subsection shall set forth fully and completely a description of the work of the Independent Counsel, including the disposition of all cases brought, and the reasons for not prosecuting any matter within the prosecutorial jurisdiction of the Independent Counsel which was not prosecuted.

(3) Unless prohibited by applicable law, an Independent Counsel may release to the Congress, the public, or to any appropriate person, such portions of a report made under this subsection as he deems appropriate.

(c) An Independent Counsel shall advise the House of Representatives of any substantial and credible information which such Independent Counsel receives that may constitute grounds for an impeachment. Nothing in this chapter shall prevent the Congress or either House thereof from obtaining information in the course of an impeachment proceeding.

(d) Nothing in this chapter shall prevent the appropriate committees of the Congress from exercising oversight jurisdiction with respect to the official conduct of any Independent Counsel appointed under this chapter, and such Independent Counsel shall have the duty to cooperate with the exercise of such oversight jurisdiction.

§ 600.3 Removal of an Independent Counsel; termination of office.

(a)(1) An Independent Counsel appointed under this chapter may be removed from office, other than by impeachment and conviction, only by the personal action of the Attorney General and only for good cause, physical disability, mental incapacity, or any other condition that substantially impairs the performance of the Independent Counsel's duties.

(2) If an Independent Counsel is removed from office, the Attorney General shall promptly submit to the division of the United States Court of Appeals for the District of Columbia

referred to in section 49 of Title 28 of the United States Code, if such court exists at that time, and to the Committees on the Judiciary of the Senate and the House of Representatives, a report specifying the facts found and the ultimate grounds for such removal. The Attorney General will not object to the making available of the report to the public by the Committees or the division of the Court.

(3) To the extent otherwise permitted by law, an Independent Counsel so removed may obtain judicial review of the removal in a civil action commenced before the division of the United States Court of Appeals for the District of Columbia referred to in section 49 of Title 28 of the United States Code, if such court exists at that time, or any court of competent jurisdiction and, if such removal was based on error of law or fact, may obtain reinstatement or other appropriate relief; provided that an Independent Counsel originally appointed by court order shall have such rights of review as provided by said order and by section 596(a)(3) of Title 28 of the United States Code.

(b) An office of Independent Counsel shall terminate when (1) the Independent Counsel notifies the Attorney General that the investigation of all matters within the prosecutorial jurisdiction of the Independent Counsel or accepted by such Independent Counsel under § 600.1(e) of this chapter, and any resulting prosecutions, have been completed or so substantially completed that it would be appropriate for the Department of Justice to complete such investigations and prosecutions and (2) the Independent Counsel files a report in full compliance with § 600.2(b) of this chapter.

§ 600.4 Relationship with components of the Department of Justice.

(a) Whenever a matter is in the prosecutorial jurisdiction of an Independent Counsel or has been accepted by an Independent Counsel under § 600.1(e) of this chapter, the Department of Justice, the Attorney General, and all other officers and employees of the Department of Justice shall suspend all investigations and proceedings regarding such matter, except to the extent required by § 600.1(d) of this chapter, and except insofar as such Independent Counsel agrees in writing that such investigation or proceedings may be continued by the Department of Justice.

(b) Nothing in this chapter shall prevent the Attorney General or the Solicitor General from making a presentation as amicus curiae to any court as to issues of law raised by any

case or proceeding in which an Independent Counsel participates in an official capacity or any appeal of such a case or proceeding.

§ 600.5 Savings provision; severability.

(a) Nothing in this chapter is intended to modify or impair any of the provisions of the Ethics in Government Act relating to Independent Counsel (sections 591–598 of Title 28 of the United States Code), or of any order issued thereunder.

(b) If any provision of the Ethics in Government Act relating to Independent Counsel (sections 591–598 of Title 28 of the United States Code) or any provision of this chapter is held invalid for any reason, such invalidity shall not affect any other provision of this chapter, it being intended that each provision of this chapter shall be severable from the Act and from each other provision.

3. A new Part 601 is added immediately after Part 600, to read as follows:

PART 601—JURISDICTION OF THE INDEPENDENT COUNSEL: IRAN/CONTRA

Authority: 28 U.S.C. 509, 510, and 515; 5 U.S.C. 301; Article II of the United States Constitution.

§ 601 Jurisdiction of the Independent Counsel: Iran/Contra.

(a) *The Independent Counsel.* Iran/Contra has jurisdiction to investigate to the maximum extent authorized by Part 600 of this chapter whether any person or group of persons currently described in section 591 of Title 28 of the United States Code, including Lieutenant Colonel Oliver L. North, other United States Government officials, or other individuals or organizations acting in concert with Lt. Col. North, or with other United States Government officials, has committed a violation of any federal criminal law, as referred to in section 591 of Title 28 of the United States Code, relating in any way to:

(1) The direct or indirect sale, shipment, or transfer since in or about 1984 down to the present, of military arms, materiel, or funds to the Government of Iran, officials of that government, or persons, organizations or entities connected with or purporting to represent that government, or persons located in Iran;

(2) The direct or indirect sale, shipment, or transfer of military arms, materiel or funds to any government, entity, or persons acting, or purporting to act as an intermediary in any transaction above referred to in paragraph (a)(1) of this section;

(3) The financing or funding of any direct or indirect sale, shipment or transfer referred to in paragraph (a) (1) or (2) of this section;

(4) The diversion of the proceeds from any transaction described in paragraph (a) (1) or (2) of this section to or for any person, organization, foreign government, or any faction or body of insurgents in any foreign country, including, but not limited to Nicaragua;

(5) The provision or coordination of support for persons or entities engaged as military insurgents in armed conflict with the Government of Nicaragua since 1984.

(b) *The Independent Counsel.* Iran/Contra shall have jurisdiction and authority to investigate other allegations or evidence of violation of any federal criminal law by Oliver L. North, and any person or entity heretofore referred to, developed during the Independent Counsel's investigation referred to above, and connected with or arising out of that investigation, and to seek indictments and to prosecute any persons or entities involved in any of the foregoing events or transactions who are reasonably believed to have committed a violation of any federal criminal law (other than a violation constituting a Class B or C misdemeanor, or an infraction, or a petty offense) arising out of such events, including persons or entities who have engaged in an unlawful conspiracy or who have aided or abetted any criminal offense.

(c) *The Independent Counsel.* Iran/Contra shall have prosecutorial jurisdiction to initiate and conduct prosecutions in any court of competent jurisdiction for any violation of section 1826 of Title 28 of the United States Code, or any obstruction of the due administration of justice, or any material false testimony or statement in violation of the federal criminal laws, in connection with the investigation authorized by Part 600 of this chapter.

Dated: March 5, 1987.

Edwin Meese III,

*Attorney General.*

[FR Doc. 87–5064 Filed 3–9–87; 8:45 am]

**BILLING CODE 4410-01-M**

## DEPARTMENT OF THE TREASURY

### Office of Foreign Assets Control

### 31 CFR Part 545

### South African Transactions Regulations

**AGENCY:** Office of Foreign Assets Control, Treasury.

**ACTION:** Final rule.

**SUMMARY:** This rule amends the South African Transactions Regulations, 31 CFR Part 545 ("the Regulations"), to implement Section 309 of the Comprehensive Anti-Apartheid Act of 1986 ("the Act"), Pub. L. 99–440, 100 Stat. 1086, as amended by H.J. Res. 756, Pub. L. 99–631, 100 Stat. 3515, and to add an interpretation relating to Section 303 of the Act. Section 309 of the Act, which became effective at 12:01 a.m. Eastern Standard Time, December 31, 1986, prohibits the importation into the United States of uranium ore, uranium oxide, coal, or textiles produced or manufactured in South Africa. The rule also includes a clarifying amendment under Section 303 with respect to U.S.-origin goods imported temporarily from South African parastatal organizations for servicing or repair.

**EFFECTIVE DATE:** 12:01 a.m. Eastern Standard Time, December 31, 1986, except that § 545.426 is effective as of October 2, 1986, and the amendment to § 545.901 is effective as of January 27, 1987.

**FOR FURTHER INFORMATION CONTACT:** Marilyn L. Muench, Chief Counsel, Office of Foreign Assets Control, Department of the Treasury, 1331 G Street, NW., Washington, DC 20220 (telephone: 202/376–0408).

**SUPPLEMENTARY INFORMATION:** In Executive Order 12571 of October 27, 1986, 51 FR 39505 (Oct. 29, 1986), the President delegated authority to the Secretary of the Treasury to implement the Act's prohibitions on imports of certain products from South Africa. Most of these import prohibitions were effective on October 2 or October 3, 1986, and were implemented pursuant to a final rule published on November 19, 1986, at 51 FR 41906. In addition, the Act continued restrictions on loans to the South African Government, which were likewise implemented in the November 19, 1986 rule. Restrictions on new investment in South Africa (including loans to the private sector) and a prohibition on South African Government bank accounts in U.S. depository institutions, effective November 16, 1986, were implemented in a final rule published on December 29, 1986, at 51 FR 46853.

Guidelines are published today in a separate notice related to this final rule delineating the products subject to the ban on importation into the United States of uranium ore, uranium oxide, textiles, and coal. The U.S. Customs Service will determine whether particular merchandise is subject to exclusion pursuant to these guidelines.

In addition, an interim rule is published elsewhere in this issue of the Federal Register permitting the temporary importation into the United States of South African uranium ore and oxide for processing and immediate exportation. These regulations also contain an interpretation indicating that U.S.-origin goods imported temporarily from South African parastatal organizations for repair or servicing in the United States are not goods marketed or otherwise exported by a parastatal organization within the meaning of Section 303 of the Act, and therefore are exempt from the prohibition of § 545.208. The U.S. Customs Service will allow such importations to be made under bond.

The Treasury Department is also amending the Regulations to reflect approval by the Office of Management and Budget of the information collection provisions contained in §§ 545.603 and 545.604 of the Regulations.

Since these regulations involve a foreign affairs function, the provisions of the Administrative Procedure Act, 5 U.S.C. 553, requiring notice of proposed rulemaking, opportunity for public participation, and delay in effective date, are inapplicable. Because no notice of proposed rulemaking is required for this rule, the Regulatory Flexibility Act, 5 U.S.C. 601 *et seq.*, does not apply. Because these regulations are issued with respect to a foreign affairs function of the United States, they are not subject to Executive Order 12291 of February 17, 1981, dealing with Federal regulations.

### List of Subjects in 31 CFR Part 545

Coal, Imports, Namibia, Parastatal organizations, South Africa, Textiles, Uranium.

For the reasons set forth in the preamble, 31 CFR Part 545 is amended as follows:

## PART 545—SOUTH AFRICAN TRANSACTIONS REGULATIONS

1. The Authority citation for Part 545 continues to read as follows:

**Authority:** 50 U.S.C. 1701 et seq.; E.O. 12532, 50 FR 36861, Sept. 10, 1985; E.O. 12535, 50 FR 40325, Oct. 3, 1985; Pub. L. 99–440, 100 Stat. 1086; Pub. L. 99–631, 100 Stat. 3515; E.O. 12571, 51 FR 39505, Oct. 29, 1986.

2. Section 545.211 is added to read as follows:

### § 545.211 Prohibition on importation of South African uranium ore, uranium oxide, coal, and textiles.

(a) Notwithstanding any other provision of law, no (1) uranium ore, (2) uranium oxide, (3) coal, or (4) textiles that are produced or manufactured in

# Corrections

Federal Register
Vol. 52, No. 55
Monday, March 23, 1987

This section of the FEDERAL REGISTER contains editorial corrections of previously published Presidential, Rule, Proposed Rule, and Notice documents and volumes of the Code of Federal Regulations. These corrections are prepared by the Office of the Federal Register. Agency prepared corrections are issued as signed documents and appear in the appropriate document categories elsewhere in the issue.

## DEPARTMENT OF COMMERCE

### International Trade Administration

### 15 CFR Part 399

[Docket No. 70347-7047]

### General License for Low Level Exports to Certain Free World Countries and Expansion of General License G-COM

*Correction*

In proposed rule document 87-5712 beginning on page 8265 in the issue of Tuesday, March 17, 1987, make the following correction:

### § 399.1 [Corrected]

On page 8267, in the second column, in amendatory instruction 9., in the second line of the third paragraph, "NOTE" should read "NOT".

BILLING CODE 1505-01-D

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 180

[PP 5E3247/P409; FRL-3145-5]

### Pesticide Tolerance for Paraquat

*Correction*

In proposed rule document 87-1356 beginning on page 2953 in the issue of Thursday, January 29, 1987, make the following corrections:

1. On page 2954, in the first column, in the fifth line, "1981" should read "1921".

2. On the same page, in the first column, in the 17th line from the bottom, "paraquate" should read "paraquat".

3. On the same page, in the second column, in the 12th line, "non-" should read "no-".

4. On the same page, in the second column, in the 17th line, after "12.5" insert "ppm (1.87 mg paraquat cation/kg/bw) (12.5, 37.5".

5. On the same page, in the second column, in the second paragraph, in the first line, "rate" should read "rat".

6. On the same page, in the second column, in the second paragraph, in the 11th line, after "as" insert ",".

7. On the same page, in the second column, in the 20th line from the bottom, "rates" should read "rat".

8. On the same page, in the second column, in the 18th line from the bottom, "though" should read "thought".

9. On the same page, in the second column, in the 17th line from the bottom, "contract" should read "contact".

BILLING CODE 1505-01-D

## DEPARTMENT OF JUSTICE

### 28 CFR Part 601

*Correction*

In rule document 87-5064 beginning on page 7270 in the issue of Tuesday, March 10, 1987, make the following corrections:

1. On page 7271, in the first column, in the chapter heading, "Chapter V" should read "Chapter VI".

### § 601.1 [Corrected]

2. On page 7272, in the third column, the section designation "§ 601" should read "§ 601.1".

BILLING CODE 1505-01-D