### In re SEALED CASE.

#### No. 87–5168.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 3, 1987.

Decided June 8, 1987.

Barry S. Simon, with whom Brendan V. Sullivan, Jr., Terrence O'Donnell, and Nicole K. Seligman, Washington, D.C., were on brief, for appellant.

Paul L. Friedman, with whom Lawrence E. Walsh, Independent Counsel, and Guy Miller Struve, Washington, D.C., were on brief, for appellee.

Before STARR, SILBERMAN and D.H. GINSBURG, Circuit Judges.

PER CURIAM:

This is an appeal of an order of civil contempt under 28 U.S.C. § 1826(a) (1982 & Supp. III 1985). On May 8, 1987, the District Court held appellant in contempt for refusing to comply with a grand jury subpoena dated April 7, 1987.

Appellant moved before the District Court to quash the subpoena pursuant to Federal Rule of Criminal Procedure 17(c), maintaining that the subpoena was rendered unlawful by virtue of its having been issued upon application of the Office of Independent Counsel and signed by two Associate Independent Counsel. The primary challenge advanced by appellant was that the statutory provisions establishing the Office of Independent Counsel, 28 U.S.C. §§ 49, 591–598 (1982 & Supp. III 1985), violate constitutional principles of separation of powers.[1] The District Court did not pass on the claims, however, and entered a judgment of contempt, ordering appellant confined for the life of the grand jury or until compliance with the court's order. The court denied appellant's alternative motions for a stay and for bail pending appeal. *See* 28 U.S.C. § 1826(b).[2]

---

1. Appellee urges that, even if appellant's challenge is appropriately addressed at this time, any constitutional problem is cured by the Attorney General's appointment of him to a newly-created Office of Independent Counsel: Iran/Contra. *See* 28 C.F.R. §§ 600.1–.5, 601; *see also* 52 Fed.Reg. 7270 (1987) (announcing the new regulations). Appellant in turn raises a number of constitutional and statutory challenges to the Attorney General's appointment. *See* Reply Brief of Appellant at 3–17.

2. Section 1826 reads, in relevant part, as follows:

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to

The issue before us is whether appellant's claims are appropriate for judicial resolution at this time. Independent Counsel argues that they are not, citing settled principles of law protecting the orderly functioning of a grand jury. *See, e.g., United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). In Independent Counsel's view, any challenge to the authority of his office, *see* 28 U.S.C. §§ 49, 591–598, can be brought only after an indictment, if any, is returned. After indictment, the argument goes, appellant could raise his arguments in support of a motion to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(1) for "defects in the institution of prosecution." Independent Counsel relies upon a line of cases beginning with the Supreme Court's decision in *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919), to assert that except for issues of testimonial privilege, issues reviewable under express statutory authorization, *see, e.g., Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), and charges that the grand jury lacked *de facto* existence, *Blair,* 250 U.S. at 282, 39 S.Ct. at 471, challenges to grand jury proceedings—in this case based on the asserted lack of authority of the Office of Independent Counsel—must await the completion of the grand jury's proceedings. Any intrusion before that time, the argument concludes, would work an unwarranted interference with those proceedings.

Appellant, in contrast, maintains that his attacks are within the scope of Rule 17(c), which permits a challenge to a subpoena *duces tecum* as "unreasonable" or "oppres-sive." Accordingly, appellant asserts that he was entitled to obtain a ruling on his defenses from the District Court in the course of the court's ruling on his motion to quash. Although he admits that denial of a motion to quash under Rule 17(c) would not, standing alone, be a final, appealable order, *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), appellant argues that the District Court's subsequent order holding him in contempt rendered it final for purposes of appeal and properly reviewable. *See* 28 U.S.C. § 1826(b).

For the reasons that follow, we are persuaded that appellant's challenges are in fact appropriate for judicial resolution at this time. *First,* the United States Supreme Court has said as much. In *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), a unanimous Supreme Court reaffirmed the rule enunciated in *Cobbledick,* namely, that denials of motions to quash subpoenas are not ordinarily appealable. This holding was expressly founded on

the necessity for expedition in the administration of the criminal law [which] justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal.

402 U.S. at 533, 91 S.Ct. at 1582. Thus, the Court squarely rejected the notion that a witness choosing the first course—compliance—should be afforded any appellate review. The witness had argued that "unless

testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement as a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
(1) the court proceeding, or
(2) the term of the grand jury, including extensions, before which such refusal to comply

with the court order occurred, but in no event shall such confinement exceed eighteen months.
(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

immediate review of the District Court's order is available to [the witness], he will be forced to undertake a substantial burden in complying with the subpoena, and will therefore be 'powerless to avert the mischief of the order.'" *Id.* at 532, 91 S.Ct. at 1582 (quoting *Perlman v. United States,* 247 U.S. 7, 13, 38 S.Ct. 417, 419, 62 L.Ed. 950 (1918)).

The Court found that the witness was not "powerless," however, since the second course—"resistance to th[e] order"—was always available. This course brought with it an adjudication of contempt, but also gave rise to an opportunity for appellate review. Following this latter course, then, would have allowed the witness to present his arguments:

> If, as he claims, the subpoena is unduly burdensome or otherwise unlawful, he may refuse to comply and litigate those questions in the event that contempt or similar proceedings are brought against him. Should his contentions be rejected at that time by the trial court, they will then be ripe for appellate review.

*Id.* (footnote omitted). *Ryan*'s teaching in this respect could scarcely be clearer or more on point.

*Second,* Congress itself has provided for appeals by contemnors that will, in some cases, occur during ongoing grand jury proceedings. In 1970, obviously long after *Blair* was decided, Congress enacted 28 U.S.C. § 1826, a comprehensive provision concerning recalcitrant witnesses in grand jury and judicial proceedings. The operative language of that provision empowers the District Court summarily to order the confinement of a witness when the witness "refuses without just cause to comply with an order of the court to testify or provide other information." *Id.* § 1826(a). Thus, under the statutory structure now in place, a witness may raise in contempt proceedings before the district court defenses amounting to "just cause" for noncompliance with the court's order. The witness may then secure appellate review of an adverse ruling.

In the context of a subpoena *duces tecum,* we believe the teaching of *Ryan* is

that the witness has "just cause" when compliance would be "unduly burdensome or otherwise unlawful." *Ryan,* 402 U.S. at 532, 91 S.Ct. at 1582; *see also In re Brummitt,* 608 F.2d 640, 643 (5th Cir.1979). In addition, it seems to us that the claim that a subpoena was applied for and issued under the signature of unauthorized persons would constitute a cognizable claim of undue burden or unlawfulness under *Ryan.* We are therefore convinced that appellant's argument satisfied the "just cause" requirement set out in section 1826 for defenses that may be interposed in contempt proceedings and on appeal from orders of contempt.

*Third,* issues analogous to appellant's have been litigated, and thus treated as ripe, in the contempt setting. The leading example is *In re Subpoena of Persico,* 522 F.2d 41 (2d Cir.1975). There, a witness subpoenaed to appear before a grand jury refused to answer certain questions concerning the identity of his employees. He was (twice) held in contempt and sentenced (the second time) to incarceration for the remainder of the grand jury's term. Persico challenged the contempt adjudication by attacking under 28 U.S.C. § 515(a) the validity of the commission held by the "Special Attorney" who directed the grand jury's investigation and upon whose application the subpoenas issued. In Persico's view, the "Special Attorney's" commission, which had been executed by an Assistant Attorney General, did not satisfy the statutory requirement that commissions contain a "specific direction" about the duties of a "Special Attorney." To the contrary, Persico argued, the commission held by the "Special Attorney" constituted a "roving authority." The Second Circuit, in a comprehensive opinion by District Judge Weinstein, examined and adjudicated the defense, rejecting it on the merits. The court did not require, as Independent Counsel would here, that Persico await the completion of the grand jury proceedings and be indicted before mounting any challenge to the authority under which the subpoenas issued.

Other decisions are to the same effect. For example, the Eighth Circuit reached the merits of a contemnor's defense that a failure to comply with 28 U.S.C. § 515(a) resulted in an unauthorized prosecutor causing issuance of the subpoena underlying the contempt order. *DiGirlomo v. United States*, 520 F.2d 372 (8th Cir.) (Heaney, J.), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975). *See also In re Perlin*, 589 F.2d 260 (7th Cir.1978); *In re DiPiero*, 394 F.Supp. 1350 (E.D.Pa. 1975); *cf. In re April 1977 Grand Jury Subpoenas*, 584 F.2d 1366, 1369 (6th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1979); *In re Patriarca*, 396 F.Supp. 859, 862–63 & n. 6 (D.R.I.1975). In neither *Persico* nor *DiGirlomo* was there any hint that the issue—whether the prosecutor appearing before the grand jury had authority to do so—was somehow unripe in the face of an order remanding the recalcitrant witness to jail.

This is not to say that an order of contempt permits a recalcitrant witness to advance and litigate any defense. *Blair*, for example, held that a witness confronting contempt cannot challenge the constitutionality of the statute violations of which the grand jury is investigating until the witness is indicted under that statute. Before indictment, the *Blair* Court reasoned, it is sheerest speculation to assume that the statute under attack would ever have a direct impact on the contemnor. The grand jury might issue no indictments at all, might indict persons other than the contemnor, or might indict the contemnor under a wholly different statute than the one challenged.

We need not here elaborate on the relationship (and apparent tension) between, on the one hand, *Ryan* and Congress' authorization of litigation (and appeals) under section 1826 and, on the other hand, the *Blair* line of cases. *See, e.g., United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613. Suffice it to say that the case at hand falls squarely within the express language of the unanimous Court's opinion in *Ryan* and is entirely in keeping, as we see it, with section 1826. Under these circumstances,

we cannot but conclude that, notwithstanding the undeniable importance of an orderly grand jury process, appellant's defenses to the contempt proceeding are now appropriate for judicial resolution.

For that reason, the District Court erred in declining to entertain appellant's contentions. We are therefore constrained to vacate the order of contempt filed May 8, 1987, and remand the case for further proceedings consistent with an order filed contemporaneously herewith and which is in the public record.

*It is so ordered.*