Oliver L. NORTH, Appellant

v.

Lawrence E. WALSH, in his official capacities
as "Independent Counsel" and
"Independent Counsel: Iran/Contra,"
et al.

Nos. 88–5228, 88–5322.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 20, 1989.

Decided July 25, 1989.

As Amended in No. 88–5228
Aug. 23, 1989.

Paul Mogin, with whom Brendan V. Sullivan, Jr., Washington, D.C., was on the brief, for appellant.

Barry S. Simon, Terrence O'Donnell, and Nicole K. Seligman, Washington, D.C., also entered appearances for appellant.

Geoffrey S. Stewart, Washington, D.C., with whom Lawrence E. Walsh and John Q. Barrett, Washington, D.C., were on the brief, for appellees.

Leonard Schaitman and Mark B. Stern, Attys., Dept. of Justice, Washington, D.C., also entered appearances, for appellees.

Before RUTH BADER GINSBURG and D.H. GINSBURG, Circuit Judges, · and KAUFMAN,* Senior Judge.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Oliver North seeks to obtain, under the Freedom of Information Act (FOIA), various documents from the Office of Independent Counsel (OIC) concerning the OIC's criminal investigation of North's involvement in the Iran/Contra affair. The district court, on two OIC motions for summary judgment, denied North's FOIA requests; that court relied on claim preclusion, issue preclusion, and FOIA exemption 7(A), which excepts from FOIA's disclosure requirements records or information compiled for law enforcement purposes to the extent that production of the records or

* Of the United States District Court for the District of Maryland, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

information can reasonably be expected to interfere with enforcement proceedings. For the reasons stated herein, we reverse the district court's grants of summary judgment against North, and we remand for further proceedings consistent with the considerations set forth in this opinion.

## I. BACKGROUND

### A. *The Grand Jury Investigation*

On April 7, 1987, a grand jury investigating the Iran/Contra matter issued a subpoena to appellant Oliver North. Alleging the unconstitutionality of the independent counsel provisions of the Ethics in Government Act, 28 U.S.C. § 49, 591–598 (1982 & Supp. V 1987), North moved, unsuccessfully, to quash the subpoena. The OIC then moved for an order requiring North to show cause why he should not be held in contempt for failing to comply with the grand jury subpoena. As part of his opposition to that motion, North had the court clerk issue a civil trial subpoena to Independent Counsel Lawrence E. Walsh demanding the production of sixteen categories of documents. This subpoena sought, *inter alia:* documents concerning the employment status and responsibilities of individuals on Walsh's staff; rulings or orders, issued by the Special Division of this court responsible for appointing Independent Counsels, dealing with the Iran/Contra investigation or the employment status of OIC staff; documents relating to contacts between the Special Division and Walsh's staff; documents on the applicability to Walsh's staff of certain conflict of interest statutes and regulations; and documents about OIC efforts to delay or prevent Congress' granting North immunity for his testimony about the Iran/Contra affair. Joint Appendix (J.A.) at 74–78.

On May 8, Chief Judge Aubrey E. Robinson of the United States District Court for the District of Columbia, without resolving North's attack on the constitutionality of the Ethics Act, denied North's plea for enforcement of his civil subpoena and held North in contempt for refusing to comply with the grand jury subpoena. On appeal, this court vacated the contempt order and instructed the district court to rule on the legal authority of the Independent Counsel and his staff, on nonconstitutional grounds if possible. *See* Order accompanying *In re Sealed Case,* 827 F.2d 776 (D.C.Cir.1987) (per curiam). On remand, North again sought enforcement of his subpoena to Walsh. Chief Judge Robinson rejected North's request, *In re Sealed Case,* Misc. No. 87–0139 (D.D.C. June 24, 1987), Tr. at 52–53, upheld the authority of the Independent Counsel under his appointment by the Attorney General [1] without addressing the constitutionality of the Ethics in Government Act,[2] and again directed North to comply with the grand jury subpoena.[3] *In re Sealed Case,* 666 F.Supp. 231 (D.D.C.), *aff'd,* 829 F.2d 50 (D.C.Cir.1987).

### B. *North's FOIA Action*

On August 10, 1987, North requested twenty-five categories of documents from the OIC under the Freedom of Information Act, 5 U.S.C. § 552 (1982 & Supp. IV 1986). Nine of these categories were the same as those North had designated in connection with the grand jury proceeding. J.A. at 74–78. Four other categories concerned the OIC's contacts with the news media and with Congress, and efforts the OIC had made to insulate its staff from exposure to the congressional testimony of North and others given pursuant to grants of immunity. *Id.* at 268–72. The OIC de-

---

**1.** Independent Counsel Walsh was originally appointed under the Ethics in Government Act, but thereafter received a parallel appointment by the Attorney General to the Office of Independent Counsel: Iran/Contra. 52 Fed.Reg. 7270 (Mar. 10, 1987) (codified at 28 C.F.R. Parts 600 and 601).

**2.** Eventually, in *Morrison v. Olson,* —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), an unrelated case involving another independent

counsel, the Supreme Court upheld as constitutional the independent counsel provisions of the Ethics in Government Act.

**3.** Chief Judge Robinson did, however, require the OIC to produce documents concerning whether Walsh had consented to his parallel appointment by the Attorney General. *In re Sealed Case,* Misc. No. 87–0139 (D.D.C. June 24, 1987), Tr. at 52–53.

nied virtually all of North's requests. North then filed an administrative appeal, which the OIC did not resolve within the twenty working days allotted under FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

On October 2, 1987, North commenced the instant FOIA action in the district court.[4] On January 15, 1988, the OIC moved to dismiss or, alternatively, for partial summary judgment, arguing that the doctrines of claim preclusion (res judicata) and issue preclusion (collateral estoppel) prevented North from obtaining through FOIA documents he had been unable to obtain during the grand jury proceeding. North filed a cross-motion for summary judgment on February 12, 1988. The FOIA action was assigned to Judge Louis F. Oberdorfer.

### C. *The Criminal Case and Kastigar Hearing*

While the motions for summary judgment in North's FOIA action were pending, on March 16, 1988, North and three co-defendants, John M. Poindexter, Richard V. Secord, and Albert Hakim, were indicted by the grand jury for their roles in the Iran/Contra affair. North's criminal case was assigned to Judge Gerhard A. Gesell. North, Poindexter, and Hakim then announced that they would move jointly to dismiss their indictments on the ground that, in violation of their fifth amendment rights, the prosecutions were informed by testimony each defendant had given before Congress under a grant of immunity.[5] *See Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (holding that United States government may compel testimony from an unwilling witness by granting immunity from use, in subsequent criminal proceedings, of the compelled testimony and evidence derived from that testimony).

On March 24, 1988, Judge Gesell stated that he would hold a preliminary hearing

on the defendants' expected *"Kastigar"* motion. On March 30, North, Poindexter, and Hakim made an informal discovery request to the OIC for documents relating to their *Kastigar* claims. This request concerned the OIC's contacts with the news media and with Congress, and actions taken or procedures employed by the OIC to ensure that the prosecutions were not tainted by the defendants' immunized testimony before Congress. J.A. at 268–72. The Independent Counsel did not comply with the request.

On April 7, North, Poindexter, and Hakim moved to dismiss the indictments on *Kastigar* grounds. On April 13, Judge Gesell issued an order stating that he would hold pretrial on April 25 a preliminary hearing to consider "certain limited *Kastigar* issues": 1) whether the Independent Counsel had taken "appropriate administrative steps" to insulate his staff from the defendants' immunized testimony; 2) whether the grand jury proceedings had been tainted by that testimony; and 3) whether the Independent Counsel intended to call witnesses at trial whose identities the OIC had discovered from that testimony. J.A. at 229–30. Judge Gesell ordered Independent Counsel Walsh to testify at the April 25 hearing about the measures taken to prevent exposure of his staff to immunized testimony and to furnish to defense counsel documents that Walsh intended to rely on "in this limited respect." *Id.* at 230. Judge Gesell stated that the defense could examine Walsh and inquire into a speech by Walsh relating to the immunity issue. The defendants could also designate one "grand jury witness" about whom they could question Walsh or one of his assistants, and could call witnesses if they filed a brief offer of proof as to each witness' testimony by April 21. Judge Gesell also ordered Walsh to provide the defendants with a list of witnesses the OIC intended to call at trial and to furnish minutes of grand

---

4. On October 1, 1987, the OIC had sought ten additional working days to respond to North's administrative appeal, as provided by 5 U.S.C. § 552(a)(6)(B). On November 30, the OIC granted North's request in part, releasing 119 pages of records.

5. Secord was not granted immunity for his congressional testimony, and so did not join the other defendants' *"Kastigar"* undertaking.

jury sessions for the court's *in camera* review. *Id.* at 230.

All other *Kastigar* matters, Judge Gesell directed, would be deferred to a final, post-trial *Kastigar* hearing. He therefore ordered that, pending the conclusion of the trial, there shall be: no questioning of grand jurors; no broad inquiry into the OIC's tactics, investigating techniques, staffing, and work product; no examination into the thought processes or accuracy of statements of proposed witnesses; and no investigation of families, friends, and social acquaintances of OIC staff, witnesses, grand jurors, or classification experts. *Id.* at 231.

On April 22, North, Poindexter, and Hakim subpoenaed Walsh to produce thirty categories of documents at the preliminary *Kastigar* hearing. *Id.* at 232–43. The subpoena, like the informal discovery request that preceded it, repeated several requests North earlier advanced in his FOIA pleas. The overlapping categories included documents concerning contacts between the OIC and the news media and Congress, and OIC efforts to insulate its staff from the defendants' immunized congressional testimony. *Id.* at 268–72. The defendants also apparently subpoenaed three additional witnesses to appear at the April 25 hearing.

That same day, however, Judge Gesell, on the OIC's motion to quash, issued an order excusing all persons subpoenaed by the defense from appearing in court for the pretrial *Kastigar* hearing. *Id.* at 244. Judge Gesell stated that counsel for the defendants had not complied with his order scheduling the April 25 hearing and instead had "engage[d] in some kind of an outreach type of program of their own"; he therefore ruled that defendants would not

be allowed to present any witnesses at the hearing. *Id.* at 254–55.

The preliminary *Kastigar* hearing took place on April 25 and 27. Judge Gesell, in the course of the hearing, ordered the OIC to provide certain documents to the defense.[6] Ruling that other documents sought by the defendants were not necessary "at this stage," Judge Gesell refused to enforce the defendants' subpoena, and he deferred acting on the OIC's motion to quash.[7]

### D. *OIC's Second Summary Judgment Motion*

On May 6, 1988, the OIC filed a second motion for partial summary judgment on North's FOIA requests for documents concerning the OIC's contacts with the news media or Congress and its efforts to insulate its staff from immunized testimony. The OIC argued that FOIA exemption 7(A) precluded North from obtaining under FOIA records or information Judge Gesell had refused to order the OIC to produce before trial. Exemption 7(A) excludes from FOIA's disclosure requirements

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings.

5 U.S.C. § 552(b)(7)(A) (Supp. IV 1986).

### E. *The District Court's FOIA Decisions*

On April 29, 1988, Judge Oberdorfer granted partial summary judgment in favor of the OIC as to the documents North had sought, unsuccessfully, during the grand jury proceeding. Judge Oberdorfer first ruled that North's FOIA request for those documents was barred by the doctrine of

---

**6.** Judge Gesell ordered the OIC to provide the defendants with all communications from the OIC to Congress relating to immunity, copies of judicial orders granting immunity to witnesses, copies of grand jury instructions concerning exposure to immunized testimony, redacted press clippings used by the OIC, and redacted portions of congressional testimony that had been seen by OIC staff members. The court also ordered the OIC to produce for the court's *in camera* review the file containing reports of inadvertent exposure to immunized testimony

by OIC staff members (the "Douglass" file). J.A. at 169–70, 182–83, 190–96, 256–58, 261–65.

**7.** On June 16, 1988, Judge Gesell preliminarily rejected the defendants' *Kastigar* motion, deferring any final consideration until after trial. *United States v. Poindexter*, 698 F.Supp. 300, 302 (D.D.C.), *appeal dismissed*, 859 F.2d 216 (D.C. Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989).

claim preclusion because North could have, but did not, invoke FOIA in the earlier proceeding:

> [N]othing precluded [North] from invoking the FOIA in support of the subpoena motion by exhausting his administrative remedy and amending his motion to put the FOIA claim at issue. If he had, and the district court had foreclosed the FOIA claim on the ground that it should be pursued separately, [North] could have appealed that ruling. As it is, he is precluded with respect to issues that he raised or could have raised and didn't.

Memorandum and Order, *North v. Walsh,* C.A. No. 87–2700–LFO, at 2, 1988 WL 47669 (Apr. 29, 1988) [hereafter Memorandum and Order (Apr. 29, 1988)].

Judge Oberdorfer then decided that issue preclusion also barred North's FOIA plea. He held that the issues raised by North's subpoena for documents during the grand jury proceeding and those involved in North's FOIA action were the same: "whether [North] is entitled by law to particular documents." *Id.* at 3. Judge Oberdorfer also ruled that the difference in the burdens of proof in the two contexts was "immaterial" because the issue was fully litigated during the grand jury proceeding and "not resolved casually or incidentally to a larger issue," Chief Judge Robinson's decision was "reviewed and approved by the Court of Appeals," and North had litigated the issue "vigorously[,] motivated by powerful motive." *Id.* at 4.

On August 31, 1988, Judge Oberdorfer granted the OIC's second partial summary judgment motion concerning the documents North, Poindexter, and Hakim had sought in connection with their *Kastigar* motion. Memorandum and Order, *North v. Walsh,* C.A. No. 87–2700–LFO, 1988 WL 98134 (Aug. 31, 1988). Judge Oberdorfer pointed to Judge Gesell's explanation that "he is engaged only in a preliminary *Kastigar* hearing, and that he prefers to defer decisions about the production of various documents for post-trial *Kastigar* consideration." *Id.* at 1. Judge Oberdorfer then stated:

The release of these records in advance of the time prescribed by the established rules of criminal discovery or by court orders would impair prospective law enforcement proceedings by distorting the criminal discovery mechanisms that have been designed to achieve a proper balance between the interests of the prosecution and those of the defense.... Judge Gesell has implemented a well-articulated mechanism for discovery under Fed.R.Crim.P. 16, and for the measured disclosure of documents related to *Kastigar* hearings. In this context, a FOIA disclosure that is broader than Rule 16, or that might undercut Judge Gesell's orders, would interfere with the ongoing criminal proceeding.

*Id.* at 2. North appealed both of Judge Oberdorfer's decisions, and this court consolidated the appeals.

## II. DISCUSSION

### A. *Claim Preclusion*

 A final judgment on a claim, under the main rule of claim preclusion, precludes a second action on that claim or any part of it; the preclusion operates "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *see generally* RESTATEMENT (SECOND) OF JUDGMENTS §§ 24, 25 (1982). Even assuming *arguendo* that North's demand for documents under FOIA and his subpoena for the same documents during the grand jury proceeding comprise the same "claim," claim preclusion does not bar North's present FOIA action because he could not have invoked FOIA during the grand jury proceeding. *See id.* § 26(c) & comment c (stating that subsequent action on same claim but under different theory of recovery or demand for relief is not precluded where formal barrier blocked presentment of that theory or demand in first action).

FOIA requires government agencies to make public virtually all information that is not specifically exempted from disclosure

**1094**

under the Act. *See United States Dep't of Justice v. Tax Analysts,* — U.S. —, —, 109 S.Ct. 2841, 2850, 106 L.Ed.2d 112 (1989); *accord EPA v. Mink,* 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). A party seeking disclosure of information that is not already available to the public under FOIA sections 552(a)(1) and (2) must first request that information from the agency. 5 U.S.C. § 552(a)(3). If the agency refuses the request and denies the requester's administrative appeal, *id.* § 552(a)(6)(A)(ii), section 552(a)(4)(B) authorizes district courts, *"on complaint, . . . to* enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." (Emphasis added.) North argues that the phrase "on complaint" indicates that a FOIA request cannot be asserted in any non-FOIA case, civil or criminal, but can be asserted only in a separate civil action.

We need not decide whether FOIA pleas must always be asserted in a *separate* complaint.[8] The statutory language, however, clearly requires that the person seeking disclosure of information, after recourse to an administrative process, file *a* complaint to trigger court action. Because no complaint could have been interposed in the grand jury proceeding, North could not have invoked FOIA in support of his subpoena for documents from the OIC.

Our position is in harmony with the Fifth Circuit's decision in *United States v. Murdock,* 548 F.2d 599 (5th Cir.1977). In that case, the court rejected a criminal defendant's contention, raised for the first time on appeal, that FOIA entitled him to certain records denied him during discovery. The Fifth Circuit held that "the Federal Rules of Criminal Procedure and the FOIA provide two independent schemes for ob-

taining information" and that FOIA contemplates "separate action." *Id.* at 602. Our sister court reasoned that "FOIA was not intended as a device to delay ongoing litigation or to enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure." *Id.;* *see also United States v. United States District Court (DeLorean),* 717 F.2d 478, 480 (1983) (holding that "in criminal cases [FOIA] does not extend the scope of discovery permitted under [Federal] Rule [of Criminal Procedure] 16").

The OIC, in any event, does not argue that North could have invoked FOIA in support of his subpoena during the grand jury proceeding. Rather, it argues that North could have filed a separate FOIA action and subsequently moved to transfer that case to Chief Judge Robinson, who could then have dealt with North's FOIA suit and his application to enforce his subpoena as related actions. The OIC cites as support for this proposition two cases in which criminal defendants represented by the same law firm as North, or their lawyers themselves, filed FOIA actions for information that had been denied the defendants in discovery. In both cases, the FOIA action was transferred to the court handling the criminal proceeding. *See* Brief for the Appellees at 24–25.

Even if we indulge the assumption that a district court judge may, in her discretion, transfer a FOIA suit to another judge presiding over discovery in a criminal case, and even if that judge may treat discovery and the FOIA plea together—a proposition we find problematic[9]—it does not follow that a litigant *must* file a separate FOIA action and move to consolidate that suit with the non-FOIA proceeding in order to avert the risk of claim preclusion. We are

**8.** Only one of the cases cited by North directly supports the broad proposition that FOIA pleas must always be asserted in a separate complaint. *See Lincoln Nat'l Bank v. Lampe,* 421 F.Supp. 346, 349 (N.D.Ill.1976) (holding that complaint in securities fraud action did not satisfy section 552(a)(4)(B)'s complaint requirement because "Congress did intend that a separate complaint be filed under FOIA"). *Cf. Toran, Information Disclosure in Civil Actions: The Freedom of Information Act and the Federal*

*Discovery Rules,* 49 Geo.Wash.L.Rev. 843, 869 (1981) ("[A] court will not consider a FOIA request together with a pending civil action absent the filing of a separate FOIA complaint.").

**9.** We note that treating the two demands for information together would likely cause a delay in the criminal proceeding. *Cf. Lincoln Nat'l Bank,* 421 F.Supp. at 349.

aware of no precedent—and the OIC cites none—that supports such an expansion of claim preclusion. That rule applies only if the litigant or his privies could have raised the issue *in* the earlier action. *See, e.g., National Savings & Trust Co. v. Rosendorf,* 559 F.2d 837, 840 n. 26 (D.C.Cir.1977) ("[R]es judicata concludes not only issues decided but also those which could have been raised and decided *in the earlier proceeding.*") (emphasis added); *Brotherhood of R.R. Trainmen v. Atlantic Coast Line R.R.,* 383 F.2d 225, 227 (D.C.Cir.1967) ("[W]hether a party loses or wins relief in his initial action, the judgment embodies all his rights stemming from the transaction involved, and he is foreclosed from later seeking relief on the basis of issues he might have raised *in the prior proceeding to support the original claim.*") (emphasis added), *cert. denied,* 389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839 (1968). Because North could not have asserted his FOIA rights in the grand jury proceeding, claim preclusion is inapplicable.

**B.** *Issue Preclusion*

█ Nor does the general rule of issue preclusion bar North's FOIA action. According to that rule, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *see also McLaughlin v. Bradlee,* 803 F.2d 1197, 1201–02 & n. 1 (D.C.Cir. 1986); *Otherson v. Department of Justice,* 711 F.2d 267, 273 (D.C.Cir.1983); *see generally* RESTATEMENT (SECOND) OF JUDGMENTS § 27. North's FOIA action, however, does not raise the same issues as his subpoena for documents during the grand jury proceeding.

Judge Oberdorfer characterized the issues involved in both situations as "whether plaintiff is entitled by law to particular documents." Memorandum and Order (Apr. 29, 1988) at 3; *see also id.* at 4 ("The ultimate issue in both cases is the same: the only difference is the authority relied upon by the plaintiff."). This characterization is overbroad; it swells the concept "issue" so that the term becomes virtually synonymous with "demand for relief." The *objective* of both of North's actions was indeed the same: to obtain certain documents from the OIC. But the *issues* raised were discrete. The issue raised in the grand jury setting was whether the documents were relevant and necessary to North's challenge to the constitutionality of the Independent Counsel provisions of the Ethics in Government Act. By contrast, no showing of relevance or need is required to obtain documents under FOIA. *See supra* p. 1094. The only issue in North's FOIA action is whether the documents were properly withheld under one of the specific statutory exemptions. *See Tax Analysts,* —— U.S. at ——, 109 S.Ct. at 2850; *accord, Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976).

In sum, because the factors determinative of North's two efforts to obtain the documents are different—relevance and need in one case, statutory exception in the other—the issues are not the same. *See Playboy Enters., Inc. v. Department of Justice,* 677 F.2d 931, 936 (D.C.Cir.1982) ("[T]he issues in discovery proceedings and the issues in the context of a FOIA action are quite different. That for one reason or another a document may be exempt from discovery does not mean that it will be exempt from a demand under FOIA."); *see also Hoover v. United States Dep't of the Interior,* 611 F.2d 1132, 1137 (5th Cir.1980) (holding that district court erred in dismissing FOIA action on ground that the same issue was pending in a contemporaneous condemnation proceeding because right of access under FOIA presented issues different from discoverability questions in the condemnation action); *see generally Peterson v. Clark Leasing Corp.,* 451 F.2d 1291, 1292 (9th Cir.1971) (per curiam) ("Issues are not identical if the second action involves application of a different legal standard[.]"); 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4417, at 165 (1981) (same).

The OIC apparently recognizes that issue preclusion does not foreclose litigation of an issue when different legal standards apply in the second action. It asserts, however, that North's FOIA requests are indeed subject to the same standards of materiality and relevance that governed his subpoena enforcement application because he is "plainly ... us[ing] FOIA as an adjunct discovery device." Brief for the Appellees at 34.[10]

We reject this contention. An attempt to interject FOIA "does not extend the scope of discovery under Rule 16" when done *as part of* criminal discovery. *DeLorean*, 717 F.2d at 480; *accord Murdock*, 548 F.2d at 602. Discovery limitations, civil or criminal, however, do not apply when FOIA requests are presented in a discrete civil action. The plaintiff's rights in a FOIA action do not depend on his or her identity; "'[t]he Act's sole concern is with what must be made public or not made public.'" *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* — U.S. —, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989) (citation omitted); *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 n. 23, 98 S.Ct. 2311, 2327 n. 23, 57 L.Ed.2d 159 (1978) (stating that person's rights under FOIA are neither diminished nor enhanced by his "litigation-generated need" for agency documents); *accord NLRB v. Sears, Roebuck & Co.*, 421 U.S.

132, 143 n. 10, 95 S.Ct. 1504, 1513 n. 10, 44 L.Ed.2d 29 (1975); *see also United States v. Buckley*, 586 F.2d 498, 506 (5th Cir.1978) (stating that "FOIA provides an independent basis for obtaining information potentially useful in a criminal trial"), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979); *Comstock Int'l (U.S.A.), Inc. v. Export–Import Bank of the United States*, 464 F.Supp. 804, 805 n. 2 (D.D.C.1979) (noting that FOIA plaintiff presumably sought documents for use in an arbitration proceeding, but holding that "a party's rights under the FOIA are neither enhanced nor diminished by its status as a private litigant"); *see generally* Toran, *Information Disclosure in Civil Actions: The Freedom of Information Act and the Federal Discovery Rules*, 49 GEO. WASH.L.REV. 843, 861 (1981) ("[A] party's desire to use information obtained under the FOIA in subsequent litigation is not a basis for denying an otherwise legitimate FOIA request. Indeed, there are situations in which FOIA will permit access to information that would not be available through discovery.") (footnote omitted); Tomlinson, *Use of the Freedom of Information Act for Discovery Purposes*, 43 MD.L.REV. 119, 121 (1984) (same).[11]

In sum, North's need or intended use for the documents is irrelevant to his FOIA action; his identity as the requesting party "has no bearing on the merits of his ... FOIA request." *Reporters Comm.*, 109

---

**10.** As part of a footnote, the OIC adds the argument that FOIA exemption 5, 5 U.S.C. § 552(b)(5), shelters the documents North was denied in the grand jury proceeding, because that exemption incorporates civil discovery privileges. Brief for Appellees at 34 n. 29 (citing *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799–802, 104 S.Ct. 1488, 1492–94, 79 L.Ed.2d 814 (1984)). Chief Judge Robinson, however, made no finding that the documents were privileged; although he did not state his reasons for refusing to enforce North's subpoena, both parties here assume that he did so at most because he concluded the the documents were not relevant or necessary to North's challenge to the constitutionality of the independent counsel provisions of the Ethics in Government Act. Because Chief Judge Robinson did not find, and the OIC offers no reason we should hold, that the documents are privileged, exemption 5, on the record thus far made, is inapplicable.

**11.** In dictum in *Washington Post Co. v. United States Dep't of Health & Human Servs.*, 690 F.2d 252, 259 n. 21 (D.C.Cir.1982), this court stated that FOIA allows private litigants to use FOIA as a discovery tool, and remarked that "[i]f abuse of FOIA is or becomes a problem, the appropriate recourse is an amendment to FOIA." This court also noted that the Justice Department had recently proposed an amendment to prohibit use of FOIA as a discovery device. *Id.; see also* Tomlinson, *Use of the Freedom of Information Act for Discovery Purposes*, 43 MD.L.REV. 119, 192–94 (1984). That amendment, North's counsel emphasized, has never been adopted. *See* Brief for the Appellant at 36.

The only sense in which North may not use FOIA as an "adjunct discovery device," then, is that he may not assert FOIA rights *as part of* the criminal proceeding and that Judge Gesell should not delay the criminal proceeding pending resolution of North's separate FOIA action. *See infra* p. 1099.

S.Ct. at 1480; *see NARFE v. Horner*, 879 F.2d 873, 875 (D.C.Cir.1989); *Washington Post Co. v. United States Dep't of Health & Human Servs.*, 690 F.2d 252, 258–59 (D.C.Cir.1982). Because the Criminal Rule 16 materiality and relevance requirements do not apply to North's FOIA action, his complaint in that action raises an issue different from any raised by his subpoena for documents in the grand jury proceeding; hence, issue preclusion is inapplicable.[12]

## C. *FOIA Exemption 7(A)*

■ Judge Oberdorfer interpreted FOIA exemption 7(A) as providing a blanket exemption for all the documents North sought in connection with the preliminary *Kastigar* hearing; he reasoned that releasing those documents under FOIA in advance of the time prescribed by Judge Gesell would undercut Judge Gesell's order and distort criminal discovery mechanisms. *See supra* p. 1093. We read exemption 7(A) differently. The fact that a defendant in an ongoing criminal proceeding may obtain documents via FOIA that he could not procure through discovery, or at least *before* he could obtain them through discovery, does not in and of itself constitute interference with a law enforcement proceeding. Rather, the government must show that disclosure of those documents would, in some particular, discernible way, disrupt, impede, or otherwise harm the enforcement proceeding.

Exemption 7(A) does not authorize automatic or wholesale withholding of records or information simply because the material is related to an enforcement proceeding. *See Campbell v. Department of Health & Human Servs.*, 682 F.2d 256, 262 (D.C.Cir. 1982). Rather, an agency seeking to shield records or information behind exemption 7(A) must show that disclosure could reasonably be expected perceptibly to *interfere* with an enforcement proceeding. *Id.* at 259 ("We hold that, to prevail under Exemption 7(A), the government must show, by more than conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding.").[13]

Case law illustrates the type of "interference" at which section 7(A) is directed. In the seminal case, *NLRB v. Robbins Tire & Rubber Co.*, the Supreme Court held that exemption 7(A) permitted the National Labor Relations Board to withhold potential witnesses' statements collected during an unfair labor practice investigation at least until completion of the Board's hearing. 437 U.S. at 236, 98 S.Ct. at 2324. The court feared that early disclosure might lead to intimidation of witnesses or make witnesses reluctant to testify, *id.* at 239–41, 98 S.Ct. at 2325–26, and would give a suspected violator of the National Labor Relations Act early access to the NLRB's case against him, allowing him to " 'construct defenses which would permit violations to go unremedied,' " *id.* at 241, 98 S.Ct. at 2326 (citations omitted). Similarly, in *Alyeska Pipeline Service Co. v. United States EPA*, 856 F.2d 309 (D.C.Cir.1988), this court held that exemption 7(A) permitted the EPA to withhold documents related to an ongoing investigation from the investigation's target because disclosure would reveal the scope and direction of the investigation and could allow the target to destroy or alter evidence, fabricate fraudulent alibis, and intimidate witnesses. *Id.* at 312–13; *see also, e.g., Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir.1987) (exempting from disclosure documents relating to criminal investigation because release of those documents would reveal scope of IRS's case against defendant and names of witnesses and might lead to tampering with

---

12. Because we conclude that the issues in the two proceedings are different, we need not resolve North's argument that issue preclusion does not apply because the burden of persuasion has shifted from North to the OIC.

13. It is well-established that "the government need not justify its withholdings document-by-document; it may instead do so category-of-doc-

ument by category-of-document." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C.Cir.1986); *accord Bevis v. Department of State*, 801 F.2d 1386, 1389 (D.C.Cir. 1986); *see also NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236, 98 S.Ct. 2311, 2324, 57 L.Ed.2d 159 (1978).

evidence); *J.P. Stevens & Co. v. Perry*, 710 F.2d 136, 142–43 (4th Cir.1983) (holding that premature release of affidavits and interviews of charging parties and witnesses, correspondence with attorneys and charging parties, and internal memoranda concerning EEOC investigation would interfere with EEOC enforcement proceeding by chilling potential witnesses, drying up sources of information, hampering agency communication about the investigation, and hindering EEOC's ability to shape and control investigations); *Campbell*, 682 F.2d at 265 (stating that on remand government "must demonstrate specifically how each document or category of documents, if disclosed, would interfere with the investigation, for example, how revelation of any particular record or record category ... would reveal to particular targets [of FDA investigation], actual or potential, the scope, direction, or focus of the FDA inquiry"); *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir.1980) (per curiam) ("We consider that disclosure of such records as witness statements, documentary evidence, [IRS] agent's work papers and internal agency memoranda, prior to the institution of civil or criminal tax enforcement proceedings, would necessarily interfere with such proceedings by prematurely revealing the government's case."); *cf. Pruitt Elec. Co. v. United States Dep't of Labor*, 587 F.Supp. 893, 895–96 (N.D.Tex.1984) (exempting from disclosure witness statements and agency memoranda relating to agency investigation but ordering disclosure of investigator's reference material, stating that "[w]hile its disclosure may somehow aid some unspecified target of a Department investigation in some unspecified manner, the likelihood that the aid would be of sufficient significance so as to

interfere in any pending investigation is slight").

Exemption 7(A), as these cases indicate, is designed to block the disclosure of information that will genuinely harm the government's case in an enforcement proceeding or impede an investigation. FOIA's legislative history confirms our understanding of the thrust of the exemption. As Senator Hart, who introduced the amendment to FOIA that became exemption 7(A), explained, the exemption was intended to apply

> whenever the Government's case in court—a concrete prospective law enforcement proceeding—*would be harmed* by the premature release of evidence or information not in the possession of known or potential defendants. This would apply also where the agency could show that the disclosure of such information *would substantially harm* such proceedings by *impeding any necessary investigation* before the proceeding.

120 CONG.REC. S17,033 (May 30, 1974) (emphases added).[14]

 The OIC, however, has not asserted on brief (and the district court did not find) that disclosure of the information North seeks can reasonably be expected to harm the government's case in court or impede its investigation. Rather, in its written submissions, the OIC maintains only that releasing the requested information would not square with Judge Gesell's regulation of the timing and scope of discovery relating to the *Kastigar* motion and would "upset the congressionally approved balance of resources open to prosecution and defendants." Brief of Appellees at 43 (quoting *Kanter v. IRS*, 433 F.Supp. 812, 819 (N.D.

---

**14.** As amended in 1974, exemption 7(A) required a showing that disclosure "would" interfere with enforcement proceedings. In 1986, Congress changed "would" to "could reasonably be expected to." Freedom of Information Reform Act of 1986, Pub.L. No. 99–570, § 1802(a), 100 Stat. 3207 (1986). This change "relieves the agency of the burden of proving to a certainty" that disclosure will interfere with enforcement proceedings, "but does not otherwise alter the test." *Reporters Comm. for Freedom of the Press*

*v. United States Dep't of Justice*, 816 F.2d 730, 738 (D.C.Cir.), *modified on reh'g*, 831 F.2d 1124 (1987), *rev'd on other grounds*, — U.S. —, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Congress also changed the threshold requirement for withholding information under exemption 7: the exemption formerly covered "investigatory records compiled for law enforcement purposes"; it now applies more broadly to "records or information compiled for law enforcement purposes."

Ill.1977)).[15] As stated above, however, FOIA rights are unaffected by the requester's involvement in other litigation; an individual may therefore obtain under FOIA information that may be useful in non-FOIA litigation, even when the documents sought could not be obtained through discovery. *See supra* p. 1096. In this sense, FOIA is itself a congressionally-approved resource open to every person, regardless of the requester's status as a criminal defendant.

The OIC's reliance on *DeLorean* and *Murdock* to support its assertion that a criminal defendant may not use FOIA to obtain documents unavailable to him through criminal discovery is misplaced. First, neither case concerns exemption 7(A). Second, and more critically, the FOIA pleas in both cases were raised in the enforcement proceedings themselves, not separately.[16] The *DeLorean* and *Murdock* courts were concerned that an ongoing criminal case and circumscribed discovery in that format would be deflected, augmented, or delayed by tying to the criminal proceedings any FOIA request. *DeLorean,* 717 F.2d at 481–82; *Murdock,* 548 F.2d at 602. That concern is not pertinent, however, where, as here, the divide between criminal prosecution and FOIA action is maintained. *See Buckley,* 586 F.2d at 506 (stating that "[a]lthough the FOIA provides an independent basis for obtaining information potentially useful in a criminal trial," it may not be used to delay the criminal trial or enlarge the scope of criminal case discovery); *Fruehauf Corp. v. Thornton,* 507 F.2d 1253, 1254 (6th Cir. 1974) (refusing to stay criminal case until defendant's counsel could obtain compliance with court order in separate FOIA case directing IRS to disclose documents);

*cf. Lincoln Nat'l Bank v. Lampe,* 421 F.Supp. 346, 348 (N.D.Ill.1976) ("[L]itigants . . . are not barred from bringing an independent FOIA action seeking information that would be valuable in civil discovery. Of course, such litigants face the risk that the FOIA suit might not be resolved before the termination of discovery in the underlying civil action."); *Renegotiation Bd. v. Bannercraft Cloth Co.,* 415 U.S. 1, 20, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123 (1974) (refusing to enjoin renegotiation of defense contracts pursuant to Renegotiation Act of 1951 until documents were produced in FOIA suit). *But cf. Columbia Packing Co. v. United States Dep't of Agric.,* 563 F.2d 495, 500 (1st Cir.1977) (stating that agency proceeding should not be enjoined pending disclosure of information under FOIA *unless* litigant shows "that without access during the proceeding to the information sought, the litigant faces a probability of very serious, specific injury which cannot be averted by any of the administrative remedies available in the course of the proceeding"); Toran, *supra,* at 868 (favoring stay of judicial proceedings pending outcome of FOIA suit in some circumstances).

At oral argument, counsel for the OIC attempted to demonstrate how disclosure in the FOIA action might actually interfere with the enforcement proceeding. The OIC homed in on disclosure of the "Douglass file," which contains records of incidents of inadvertent exposure of OIC staff members to immunized testimony. Armed with that file at trial, the OIC suggested, North might be positioned to advance his *Kastigar* defense or interject irrelevant evidence or testimony. We remain unpersuaded. First, as developed above, as the law now stands, North has everyman's right to file

---

**15.** In *Kanter v. IRS,* 433 F.Supp. 812 (N.D.Ill. 1977), the court stated broadly that a separate FOIA action used to circumvent discovery limitations in a pending criminal case might constitute interference under exemption 7(A) because it could "upset the congressionally approved balance of resources open to prosecution and defendants." *Id.* at 819. The court went on, however, to hold that the government had not carried its burden of showing some specific harm to the criminal trial, such as the revelation of prospective witnesses, confidential informants,

or the government's evidence and strategy, and therefore denied the government's summary judgment motion. *Id.* at 822 n. 18, 824.

**16.** In *Murdock,* a criminal defendant raised FOIA for the first time on appeal, arguing that the district court trying his criminal case should have afforded him access during discovery to documents to which he was entitled by FOIA. 548 F.2d at 601.

a separate FOIA action to obtain information useful in a non-FOIA proceeding. *See supra* p. 1096. Second, the district court retains full control over the evidence admitted or lines of inquiry pursued in the criminal case. If any evidence or question is irrelevant to the trial, the court can simply keep it out.

OIC counsel also cited a footnote in Judge Gesell's opinion ruling preliminarily on the joint *Kastigar* motion; the note shows, according to the OIC, that Judge Gesell thought premature disclosure of the Douglass file would disrupt the trial. Judge Gesell's footnote states in full:

> Defendants' motion for immediate access to the Douglass file is denied. The Court has read the file, which shall remain under seal. It would delay the trial, intrude into Independent Counsel's work product, and, moreover, rulings made herein as to the scope and effect of use immunity make disclosure wholly unnecessary, at least at this juncture.

*United States v. Poindexter*, 698 F.Supp. 300, 313 n. 14 (D.D.C.), *appeal dismissed*, 859 F.2d 216 (D.C.Cir.1988), — U.S. —, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989). We see in this statement, however, no more than another indication that Judge Gesell wished to proceed promptly with the trial and defer full consideration of the *Kastigar* issues and associated discovery until after trial. As stated above, nothing in North's separate FOIA action required delay of the criminal trial proceedings. *See supra* at 1098–99.

Exemption 7(A), in sum, does not provide a blanket exemption for all the information North was unable to obtain in discovery prior to his criminal trial. The fact that Judge Gesell wished to defer full discovery relating to the *Kastigar* motion until after trial does not, standing alone, prove that

disclosure before then can reasonably be expected to interfere with the enforcement proceeding.[17] We therefore remand this case to the district court. During the pendency of this appeal, we note, North has been convicted by a jury of three counts of the indictment and acquitted on nine others. Disclosure of the information North seeks cannot interfere with parts of the enforcement proceeding already concluded. On remand, then, the district court should consider whether disclosure can reasonably be expected to interfere in a palpable, particular way with the remaining portions of the enforcement proceedings, including the post-trial *Kastigar* hearing.[18] The district court may also consider other justifications the OIC may offer for withholding the documents from North. *See supra* note 10.

### III. CONCLUSION

Neither claim preclusion nor issue preclusion bars North's FOIA action for documents he sought during the grand jury proceeding. FOIA exemption 7(A) does not permit the withholding of documents that Judge Gesell refused to order released before trial unless the OIC can demonstrate that disclosure in advance of the time prescribed by Judge Gesell would genuinely harm or impede an enforcement proceeding. We therefore remand this case to the district court for further consideration of North's FOIA action consistent with this opinion.

*It is so ordered.*

---

**17.** The OIC also argues that allowing the FOIA action to proceed would undermine Judge Gesell's imposition of a sanction on North. *See* Brief for the Appellees at 45–48. However, Judge Gesell did not refuse to order the production of documents as a sanction against North; he did so because he wanted to proceed with the trial. Judge Gesell did refuse to allow North's witnesses to testify at the pre-trial *Kastigar* hearing because North had called too many witnesses too late. *See* J.A. at 254–55. But Judge

Gesell refused to allow North to subpoena all the documents he wanted pretrial even before North violated the court's orders. We are satisfied, therefore, that Judge Gesell's discovery rulings were not intended as a sanction.

**18.** Both parties agree that the post-trial *Kastigar* hearing is part of the "enforcement proceeding." We note that Poindexter and Hakim, who joined in the *Kastigar* motion, have not yet been tried.