# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 10, 2017         Decided August 4, 2017

No. 15-5314

WILLIAM S. PRICE,
APPELLANT

v.

U.S. DEPARTMENT OF JUSTICE ATTORNEY OFFICE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00847)

*Benjamin G. Barokh*, Student Counsel, argued the cause as *amicus curiae* in support of appellant. With him on the briefs were *Steven H. Goldblatt*, appointed by the court, *Shon Hopwood*, Supervisory Attorney, and *Jeffrey C. Thalhofer*, Student Counsel.

*Peter C. Pfaffenroth*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *R. Craig Lawrence* and *Jane M. Lyons*, Assistant U.S. Attorneys.

Before: TATEL, BROWN, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Dissenting opinion filed by *Circuit Judge* BROWN.

GRIFFITH, *Circuit Judge*: In this appeal, we are asked to decide whether the government may deny a criminal defendant's request under the Freedom of Information Act for records related to his case on the ground that he waived his right to seek that information as part of a plea agreement. In this case the answer is no, because the government has failed to identify any legitimate criminal-justice interest served by the waiver.

I

In March 2007, William Price pled guilty in the Western District of Missouri to two offenses involving production and receipt of child pornography.[1] In exchange for a favorable sentencing recommendation from the government, Price entered into a plea agreement that included a waiver of his rights under FOIA to records connected to his case.[2] He was

---

[1] Price was convicted under 18 U.S.C. § 2251(a), which prohibits knowingly attempting to induce a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, and 18 U.S.C. § 2252(a)(2), which prohibits knowingly receiving visual depictions of minors engaged in sexual conduct.

[2] Specifically, Price agreed to

> waive[] all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the

sentenced to fifty years' imprisonment and is currently incarcerated.

In October 2011, Price submitted a FOIA request to the FBI for all records pertaining to his ex-wife, accompanied by a privacy waiver she had signed. The FBI denied his request, claiming that the records Price sought related to his case and that he had waived his right to them. In May 2014, Price challenged the denial in a *pro se* suit in district court, arguing that FOIA rights cannot be waived. In the alternative, he argued that the waiver did not cover all of the records he sought. In August 2014, the district court granted the government summary judgment, concluding that the FBI had lawfully denied Price's requests. According to the district court, it would be anomalous to forbid the waiver of a statutory right under FOIA when the Supreme Court has allowed the waiver of important constitutional rights. The district court did not address Price's argument that some of the information he requested was not covered by his waiver. Price timely filed a notice of appeal from the district court's order, and we have

---

Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

J.A. 138.

FOIA waivers in plea agreements are neither common nor completely unheard of. A recent study of the various kinds of waivers included in plea agreements found that, in 2009, 25% of robbery plea agreements and 23% of arson plea agreements contained a FOIA waiver. *See* Susan R. Klein et al., *Waiving the Criminal Justice System: An Empirical and Constitutional Analysis*, 52 AM. CRIM. L. REV. 73, 87 (2015).

jurisdiction pursuant to 28 U.S.C. § 1291.[3] We review de novo a district court's "decision granting summary judgment to an agency claiming to have complied with" its obligations under FOIA. *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661-62 (D.C. Cir. 2003).

The government argues that this suit is an attempt by Price to challenge his conviction or sentence that turns on whether his waiver was knowing, voluntary, and intelligent. We see it differently. This is a FOIA suit in which we are asked to determine de novo whether the FBI lawfully withheld records that Price requested.

## II

In general, "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (citations omitted); *accord United States v. Guillen*, 561 F.3d 527, 530 (D.C. Cir. 2009); *see also United States v. Ruiz*, 536 U.S. 622, 629-30 (2002) ("A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel . . . ."). Amicus contends that the district court should have declined to enforce the waiver, first because FOIA rights are never waivable, and, in the alternative, because

---

[3] Price is not represented by counsel on appeal, and he has not filed any briefs himself. Rather, we appointed an amicus—the Georgetown Appellate Litigation Program—to brief and argue his cause before us.

waivers of FOIA rights in plea agreements contravene public policy.[4]

## A

Amicus argues primarily that no person may ever waive his right to seek records under FOIA. Statutory rights are generally waivable unless Congress affirmatively provides they are not, *see United States v. Mezzanatto*, 513 U.S. 196, 200-01 (1995), and amicus suggests two ways in which Congress has shown that FOIA rights may not be waived. First, Price observes that FOIA requires the disclosure of all records except those specifically exempted from its coverage. As amicus notes, these exemptions are "explicitly made exclusive." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976); *see also* 5 U.S.C. § 552(d) (FOIA "does not authorize withholding of information or limit the availability of records to the public except as specifically stated in this section."). There are nine categories of records exempted from disclosure,

---

[4] We note that the district courts to have considered the question have held that FOIA waivers in plea agreements are enforceable. *See, e.g.*, *Caston v. Exec. Office for U.S. Att'ys*, 572 F. Supp. 2d 125, 129 (D.D.C. 2008); *Boyce v. United States*, Civ. No. 1:08-cv-535, 2010 WL 2691609, at *1 (W.D.N.C. July 6, 2010); *Patterson v. FBI*, Civ. No. 3:08-cv-186, 2008 WL 2597656, at *2 (E.D. Va. June 27, 2008). And the Fourth Circuit, in an unpublished opinion, once referred to a plea agreement that contained a FOIA waiver as "valid and binding." *United States v. Lucas*, 141 F. App'x 169, 170 (4th Cir. 2005). Those courts, however, did not address the questions posed here: whether FOIA rights are inherently unwaivable for everyone or, alternatively, whether public-policy concerns ever require courts to refrain from enforcing FOIA waivers contained in plea agreements. We now try our hand at answering those questions.

including, for example, records that are classified pursuant to Executive Order, relate solely to internal agency policies or procedures, are specifically exempted from disclosure by other statutes, or would constitute an unwarranted invasion of personal privacy if disclosed. *See id.*

As amicus sees it, a waiver of FOIA rights would "operate[] as a tenth exemption," and would therefore be unenforceable, "because Congress expressly prohibited agencies from creating additional FOIA exemptions." Amicus Br. 9-10. We disagree. Such a waiver does not function as a tenth FOIA exemption. Amicus confuses the question of whether an exemption keeps a document out of the public's reach with the question presented here: whether a particular person may access that document. But an individual's waiver of his FOIA rights does not limit the public's right to the document.

To understand why, consider that when FOIA "does not apply" to a category of documents, 5 U.S.C. § 552(b), those records are exempt from *all* public disclosure. *See DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015). The agency is under no obligation to turn over those documents—to *anybody*. Things are altogether different when an agency denies someone a document he has promised not to seek. In that circumstance, the agency is not saying that FOIA "does not apply" to the document. Indeed, the document is still subject to FOIA *and remains available to other requesters*—just not to the person who waived his right to it. That result is perfectly compatible with the text of FOIA, which requires the agency to invoke one of the nine exemptions if it wishes to place records off limits to "*the public*." 5 U.S.C. § 552(d) (emphasis added). In short, Congress restricted agencies' ability to remove books from the

library, but said nothing about an individual's freedom to give up his library card, if he so chooses.

Next, amicus argues that the intent of Congress to protect FOIA rights from waiver is inherent in the "'fundamental principle' . . . [that] 'the identity of the requesting party has no bearing on the merits of his or her FOIA request.'" Amicus Reply Br. 8 (quoting *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1183 (D.C. Cir. 2011)) (discussing FOIA's command that records be made promptly available "to any person" who requests them, 5 U.S.C. § 552(a)(3)(A)). Although the identity of a requester is generally irrelevant to whether an exemption applies, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989) (explaining that the government may not deny a person's FOIA request on the ground that he lacks a special interest in the records sought), this case is not about whether a document can be denied under one of the exemptions; it is simply about whether an agency, as a general matter, may decline to turn over records to somebody who has *specifically contracted* with the government not to seek them. Nowhere in the statute has Congress forbidden that practice.

One additional point: amicus contends that FOIA rights cannot be waived in the same way that a person cannot give away his rights to a minimum wage or overtime pay under the Fair Labor Standards Act. That analogy is misplaced. Minimum-wage and maximum-hour laws operate by limiting freedom to contract, *see W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391-92 (1937), so it is easy to see how the statutory scheme could be frustrated by allowing workers and management to contract around those laws. Indeed, the entire point of such laws is to stave off low salaries and wages that some people would accept if given the choice. By contrast,

allowing individuals to contract away their personal right to information under FOIA does not jeopardize the statutory scheme. The statute's "sole concern is with what must be made public or not made public." *Reporters Comm.*, 489 U.S. at 772 (quoting Kenneth Culp Davis, *The Information Act: A Preliminary Analysis*, 34 U. CHI. L. REV. 761, 765 (1967)); *see also North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989). And here, as both Price and the government acknowledge, almost any other person could get the same records Price has requested—just not Price himself. The records he seeks remain readily available to the public, assuming they are not subject to an exemption.

The implications of Price's argument underscore its weakness. Under his view, FOIA claims would become practically impossible to settle. Suppose the FBI denies a person's request for documents, and the person sues under FOIA. Because litigation is uncertain and costly, settlement talks ensue. The FBI offers to give him document X while continuing to withhold from him documents Y and Z. The requester accepts the FBI's offer and voluntarily dismisses his suit. But a month later, buyer's remorse sets in and he asks the FBI for documents Y and Z. Presumably, the FBI would deny his request on the ground that, just last month, he signed on to a settlement in which he agreed not to receive those documents. If Price were correct that the FBI would be barred from denying his request unless it could invoke one of the statutory exemptions, the promise made in the settlement would be meaningless. If that were the law, the agency would never have settled with him to begin with. Indeed, the agency would never settle with anybody. FOIA settlements would always be—from the government's perspective—meaningless. That outcome is absurd. FOIA cases settle all the time, and accepting Price's

argument would put an end to that longstanding practice. We decline to take the bait.

B

More fundamentally, in responding to Price's public-policy-based challenge, the government has not pointed us to any legitimate criminal-justice interest served by including a waiver of FOIA rights in Price's plea agreement. Amicus argues, and all parties agree, that a "prosecutor is permitted to consider only legitimate criminal justice concerns in striking [a plea] bargain—concerns such as rehabilitation, allocation of criminal justice resources, the strength of the evidence against the defendant, and the extent of [a defendant's] cooperation with the authorities," *Town of Newton v. Rumery*, 480 U.S. 386, 401 (1981) (O'Connor, J., concurring); *see also id.* at 397 (majority opinion) (evaluating the degree to which an agreement in the criminal context "further[ed] legitimate prosecutorial and public interests"). This set of legitimate interests places boundaries on the rights that can be bargained away in plea negotiations.

For example, waivers of appeal rights are permissible, in part, because they promote finality: the prosecution avoids expending time and resources putting the matter to rest. *See, e.g.*, *United States v. Teeter*, 257 F.3d 14, 22 & n.5 (1st Cir. 2001). Similarly, when a criminal defendant waives his right to a trial, prosecutors save the time and resources typically involved in obtaining a conviction. And when a criminal defendant waives his right to impeachment evidence under *Giglio v. United States*, 405 U.S. 150 (1972), prosecutors can secure guilty pleas without prematurely disclosing witness information and trial strategy. *Ruiz*, 536 U.S. at 631-32. A criminal defendant can even agree to give up his right to pursue

a section 1983 damages action in exchange for dropping a prosecution, as long as the prosecutor has "an independent, legitimate reason . . . directly related to his prosecutorial responsibilities" for seeking such an agreement—for instance, sparing a victim "the public scrutiny and embarrassment she would have endured" as a key witness if the case had gone forward. *Rumery*, 480 U.S. at 398.

Here, however, the government has not pointed us to any legitimate criminal-justice interest served by allowing for FOIA waivers in plea agreements. Indeed, all the government says is that "the public interest in the efficient and effective prosecution and conviction of sex offenders . . . is considerable and outweighs whatever public interest may exist in the [contents of the] investigation and prosecution files of [a] single defendant." Appellee Br. 36. But how? Certainly litigating FOIA disputes in court can be burdensome for the parties involved, as the government notes, *see id.* at 46, but in what way do FOIA waivers actually support "efficient and effective prosecution"? The government leaves us to guess.

When pressed at oral argument about what legitimate criminal-justice purpose FOIA waivers might serve, the government simply responded: "Prisoners frankly have a lot of time on their hands and they write a lot of FOIA requests, and it is a burden to agencies especially like the FBI . . . ." Oral Arg. Rec. at 16:43-17:00. But the government did not clearly make this argument in its brief, despite amicus having called into question the weight of interests served by enforcing FOIA waivers in plea agreements.

True, in another point gone missing from the government's brief and raised by its counsel only at oral argument, FOIA waivers may occasionally promote the government's

legitimate interest in finality. But as best we can tell, FOIA waivers promote finality only by making it more difficult for criminal defendants to uncover exculpatory information or material showing that their counsel provided ineffective assistance. That argument takes the finality interest too far. After all, a defendant can never waive his right to bring a colorable claim of ineffective assistance of counsel, even though such claims undermine finality. *See Guillen*, 561 F.3d at 530 (holding that plea waivers are unenforceable "insofar as the defendant makes a colorable claim he received ineffective assistance of counsel in agreeing to the waiver"); *see also Washington v. Lampert*, 422 F.3d 864, 869 (9th Cir. 2005) (noting that "other circuits have barred waivers of [ineffective assistance of counsel] claims associated with the negotiation of plea agreements"). Some courts have even suggested that the right to material exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963), also cannot be waived. *See, e.g.*, *McCann v. Mangialardi*, 337 F.3d 782, 787-88 (7th Cir. 2003).

And as amicus observes, FOIA plays a significant role in uncovering undisclosed *Brady* material and evidence of ineffective assistance of counsel, *see* Amicus Br. 27, and in practice has led to uncovering records relevant to ineffective-assistance-of-counsel claims, such as plea offers not communicated by defense counsel to clients, *see Hare v. United States*, 688 F.3d 878, 880 (7th Cir. 2012); *Albillo-De Leon v. Gonzales*, 410 F.3d 1090, 1100 (9th Cir. 2005), as well as evidence of *Brady* violations, *see Monroe v. Angelone*, 323 F.3d 286, 294 (4th Cir. 2003); *Bagley v. Lumpkin*, 798 F.2d 1297, 1299 (9th Cir. 1986); *United States v. McDavid*, No. 06-cr-0035, ECF No. 442 (E.D. Cal. July 14, 2014) (describing *Brady* materials obtained through FOIA that led to the release of a man sentenced to 19.5 years' imprisonment); *Ex parte Miles*, Nos. AP-76,488 & AP-76,489 (Tex. Ct. Crim. App. Jan.

15, 2012) (vacating the conviction of a man sentenced to sixty years' imprisonment after a FOIA request uncovered suppressed police reports and evidence that another person confessed to the crime); *see also Timothy Howard*, National Registry of Exonerations, http://www.law.umich.edu/ special/exoneration/Pages/casedetail.aspx?caseid=3311 (last visited July 25, 2017) (describing suppressed evidence uncovered through FOIA that led to the exoneration of two men who had spent decades on death row). FOIA thus provides an important vehicle for vindicating significant rights—and for keeping prosecutors honest. Indeed, in some cases it provides the *only* vehicle. And the government, at least in this case, has not told or shown us how taking that tool away from criminal defendants serves the interests of justice compared to the harms those waivers cause.

In the dissent's view, our inquiry is unnecessary because "achieving a guilty plea *is* the legitimate criminal justice interest" served by the waiver of any right that helps to secure the plea in the first place. Dissenting Op. at 8 (emphasis added); *see also id.* at 9-10 (reasoning that "no 'legitimate criminal-justice' interest need be satisfied beyond securing a knowing, voluntary, and intelligent admission of guilt"). But that principle would allow for the waiver of *any* right as part of a plea agreement. For instance, it would allow prosecutors to ask a criminal defendant to waive his right to collect social security benefits. Surely, though, we would decline to enforce that waiver, based on the rule that a prosecutor must have legitimate criminal-justice interests in mind when negotiating the terms of a plea agreement.

At the end of the day, a plea agreement that attempts to waive a right conferred by a federal statute is, like any other contract, "unenforceable if the interest in its enforcement is

outweighed [under] the circumstances by a public policy harmed by enforcement." *Rumery*, 480 U.S. at 392 (citing RESTATEMENT (SECOND) OF CONTRACTS § 178(1) (1981)). More specifically, the Supreme Court has instructed us to consider whether agreements with prosecutors "further legitimate prosecutorial and public interests" before enforcing those agreements. *Id.* at 397. And while "[t]he mere potential for abuse of prosecutorial bargaining power" does not on its own invalidate waivers of defendants' rights, *Mezzanatto*, 513 U.S. at 210, this uneven power dynamic lurks in the background in cases like these and calls for a careful consideration of Price's claim. Here Price has shown, through real-world examples, that enforcing a FOIA waiver would make it harder for litigants in his position to discover potentially exculpatory information or material supporting an ineffective-assistance-of-counsel claim. This is especially true given that, "with rare exceptions, only the waivor" in such cases "has the requisite knowledge and interest to lodge a FOIA request in the first place." Amicus Br. 27. On the other side of the scale, the government has offered us nothing more than the unsupported blanket assertion that FOIA waivers assist in effective and efficient prosecution, without any support or explanation *how*. Under these particular circumstances, and based on the briefing in this case, we have little trouble in concluding that the public interest in enforcing Price's waiver is outweighed by the harm to public policy that enforcement would cause.

The dissent, by contrast, views this as a case about the voluntariness of Price's waiver and would enforce the waiver because it was voluntary. But the fact that Price freely chose to waive his FOIA rights is not at issue here. The question is simply whether Price's agreement to waive his FOIA rights offends public policy and is therefore unenforceable. In

answering that question, we decline to do the government's work for it and supply an argument the government did not make. To be clear, we do *not* hold that FOIA waivers in plea agreements are always unenforceable. We simply hold that the government may not invoke *Price's* FOIA waiver as a basis for denying him access to the records he requests because, in *this* case, the government has given us no adequate rationale for enforcing this waiver in light of the public-policy harms Price has identified. That's it.

Because we hold that the district court should have declined to enforce Price's FOIA waiver on public-policy grounds, we do not address Price's alternative argument that some of the records he requested fell outside the scope of his waiver. We express no view as to whether Price's FOIA request was otherwise properly made or whether any of FOIA's nine categorical exemptions applies to the records he requested.

IV

For the foregoing reasons, we reverse the order of the district court and remand for further proceedings consistent with this opinion.

*So ordered.*

BROWN, *Circuit Judge*, dissenting: This case presents the following question: May a criminal defendant, in pleading guilty, waive his right to FOIA requests pertaining to the investigation or prosecution underlying his criminal conviction? Thus far, every court to consider this question has answered "yes." We are now the first to say "no." The Court suggests its answer is limited only to this case, but *no* FOIA guilty-plea waiver could ever meet the standard employed here. Worse still, the Court's answer rests on a distortion of the Supreme Court's guilty-plea-waiver jurisprudence—a distortion portending far-reaching, and presumably unintended, consequences.

Rather than answer the question presented, the Court crafts a new guilty-plea-waiver standard. Now, the Government is burdened with proving a "legitimate criminal-justice" interest that a court must accept before any guilty-plea waiver is valid. The nature of the right no longer informs whether it is waivable; whether the defendant knowingly, voluntarily, and intelligently waived that right is now beside the point. These changes are in contrast with half-a-century of Supreme Court jurisprudence. The majority tap-dances around the Supreme Court's well-established standards by calling this a "FOIA suit," not a waiver case. Op. 4. Nonsense. No fake label will turn a rose into a saguaro. The FOIA statute plays no substantive role in the Court's novel analysis. This is a case about guilty-plea waivers. *See id.* at 9–11.

Comparing this decision to the Supreme Court's long-established guilty-plea-waiver jurisprudence, it is now harder for a defendant to waive his FOIA right to records underlying his criminal conviction than it is to waive his constitutional rights to a jury trial, confronting witnesses, and being presumptively innocent. "How silly is that?" *Cf.* DJ Gallo, *Allen Iverson's 'Practice' Rant: 10 Years Later*, ESPN (May 7, 2012) http://www.espn.com/blog/playbook/fandom/post/_/id/2026/a

2

llen-iversons-practice-rant-10-years-later ("[W]e're not even talking about the game, when it actually matters, we're talking about practice.").

Rather than revise the law, we should have applied the Supreme Court's waiver principles and upheld Price's FOIA waiver. Because the Court did not do so, choosing cleverness over wisdom, I respectfully dissent.

**I.**

The Court casts the Supreme Court's guilty-plea-waiver standards aside while fashioning a newfangled compass from one of Justice O'Connor's concurring opinions. Citing *Town of Newton v. Rumery*, 480 U.S. 386, 401 (1987) (O'Connor, J., concurring), the Court finds Price's waiver invalid because the Government failed to show "any legitimate criminal-justice interest" behind it. Op. 9. But Justice O'Connor's dicta is not the law. No other Member of the Supreme Court joined Justice O'Connor's concurrence. No party before us argued Justice O'Connor's dicta about "legitimate criminal-justice" interests should control. Indeed, the concurrence has *never* been used to invalidate a guilty-plea waiver. This should come as no surprise, as *Rumery* is not even about guilty pleas.

In *Rumery*, the Supreme Court assessed the acceptability of a "release-dismissal agreement"—an agreement where a defendant releases his right to bring a lawsuit under 42 U.S.C. § 1983 in exchange for the dismissal of charges against him. *Rumery*, 480 U.S. at 393–97. Release-dismissal agreements, as both the plurality and Justice O'Connor recognized, are *not* equivalent to guilty pleas. The "judicial oversight" inherent to entering a guilty plea separates the two, and gives the guilty plea an "important check against abuse" lacking in release-dismissal agreements. *See id.* at 393 n.3 (majority opinion); *id.*

at 400 (O'Connor, J., concurring); *see also Cady v. Arenac Cty.*, 574 F.3d 334, 348 (6th Cir. 2009) (Martin, J., concurring) ("Release-dismissals are not like plea bargains: the justification for plea bargains focuses on the prosecutor's duties with respect to his limited institutional role and his concern for often limited prosecutorial resources. Release-dismissals, by contrast, concern only whether the defendant may sue the officers who apprehended him for constitutional violations . . . or some extant third-parties in *civil* court . . . .").

Importantly, *Rumery* acknowledged that the "public interest" in a guilty plea is the entered plea itself. A knowing, voluntary, and intelligent guilty plea assures the public that the crime will be punished and the prosecutor has a factual basis for his charges. *See* 480 U.S. at 393 n.3 (majority opinion). The "public interest" in a release-dismissal agreement is more tangential. This contrast led Justice O'Connor to conclude that, in the distinct context of release-dismissal agreements, the public interest demands that the court "[c]lose[ly] examin[e] . . . all the factors" affecting a particular agreement. *See id.* at 402 (O'Connor, J., concurring). The *Rumery* Court's reference to "legitimate prosecutorial and public interests," *id.* at 397, cited by the Court to bolster its reliance on Justice O'Connor's concurrence, *see* Op. 9, is also specifically tied to the distinct question of whether release-dismissal agreements are generally invalid. *See* 480 U.S. at 397 ("Because release-dismissal agreements may further legitimate prosecutorial and public interests, we reject the Court of Appeals' holding that all such agreements are invalid *per se*."). Neither Justice O'Connor's concurrence, the *Rumery* majority opinion, nor the plurality opinion suggest a case-by-case inquiry into the public interest is similarly required regarding guilty-plea waivers.

The Court takes one sentence of Justice O'Connor's concurring opinion and turns it into a rule. "[T]he prosecutor

is permitted to consider only legitimate criminal justice concerns in striking his [plea] bargain—concerns *such as* rehabilitation, allocation of criminal justice resources, the strength of the evidence against the defendant, and the extent of his cooperation with the authorities." *Id.* at 401 (O'Connor, J., concurring (emphasis added)). This sentence is dicta within dicta; Justice O'Connor's *concurring* views about what a prosecutor may consider when striking a plea bargain are raised solely as part of a *contrast* with the release-dismissal agreement at issue in *Rumery*. This sentence cites no authority. It is illustrative, not definitive, toward what "criminal justice concerns" are "legitimate." It sets forth no basis to conclude that *every* waiver within a guilty plea must achieve a specific criminal justice interest, or any basis to evaluate whether any waiver does so. And, the plurality opinion dispels any suggestion that a court need consider public interest concerns beyond a plea's voluntariness. *See* 480 U.S. at 395 (plurality opinion) ("Thus, we hesitate to elevate more diffused public interests above Rumery's considered decision that he would benefit personally from the agreement.").

The Court displays considerable impudence by chiding the Government for failing to brief a "legitimate-criminal justice" interest behind Price's FOIA waiver. *See* Op. 10. Why would any litigant brief a standard never applied to guilty-plea waivers, and one that no party sought to apply? Indeed, at oral argument, *amicus* counsel repeatedly acknowledged that the type of FOIA waiver in Price's guilty plea satisfied any "legitimate criminal-justice" interest. Oral Arg. Rec. at 12:18 – 12:22 ("We agree that there is a nexus between FOIA waivers and the criminal process"); *id.* at 11:34 – 11:39 ("We're not saying that FOIA waivers don't have a sufficient nexus to the criminal process"). *Amicus* counsel went further, *disclaiming any relevancy* to Justice O'Connor's analysis:

> Justice O'Connor's concurring opinion in *Rumery* was about whether the waiver in a plea deal has a sufficient nexus to the criminal process. We're not saying that FOIA waivers don't have a sufficient nexus to the criminal process. The argument I'm making with the no limiting principle point is that it doesn't stop the government from extracting waivers in non-criminal contexts. *And, whether there is a nexus there or not is irrelevant to* Rumery*'s analysis*.

*See id.* 11:26 – 11:52 (emphasis added). More significantly, when the Court introduced this issue at oral argument, Government counsel identified multiple "legitimate criminal-justice" objectives served by FOIA waivers—including the safeguarding of both scarce investigative resources and information within FOIA material that an inmate could use to harm victims or third-parties.[1] *See, e.g.*, *id.* at 14:38 – 14:43. The Court dismissed these concerns as mere make-weight (even as Price's ex-wife informed on him and she is the subject

---

[1] Government counsel also suggested a further "legitimate criminal-justice" interest: incentivizing a litigant to use the discovery process if he has questions about the Government's case against him, rather than plead first and ask ceaseless questions later. *Cf.* Antonin Scalia, *The Freedom of Information Act Has No Clothes*, REGULATION, 19 (Mar.-Apr. 1982) https://object.cato.org/sites/cato.org/files/serials/files/regulation/1982/3/v6n2-3.pdf ("Requests by a litigant for judicially compelled production of documents from the opposing party's files . . . can be kept within reasonable bounds by the court itself. But when the government is the adversary, there no longer is any need to use the judicial discovery mechanism. A[] FOIA request can be as wide as the great outdoors.").

of his FOIA requests)[2] while, at the same time, never articulating a "legitimate criminal-justice" metric.

The Justice Department has long been concerned about cascading FOIA requests. *See, e.g.*, Dep't of Justice, Office of Information Policy, *Surrogate FOIA Requests Increasing*, VII FOIA Update No. 1 (Jan. 1, 1986), https://www.justice.gov/oip/blog/foia-update-surrogate-foia-requests-increasing (identifying "surrogate" FOIA requests from prisoners on behalf of other prisoners, resulting, in some cases, in "hundreds of FOIA requests on behalf of other persons to various federal law enforcement agencies" that then produce FOIA lawsuits). In the distinct release-dismissal context, where Justice O'Connor's *Rumery* concurrence has actually applied, a general interest in efficiently "allocat[ing] . . . criminal justice resources" and in "aid[ing] in the disposition of [the prosecutor's] heavy case load" "would probably suffice" as public interests justifying a prosecutor in seeking a defendant waive his right to bring a civil-rights lawsuit. *See, e.g.*, *Coughlen v. Coots*, 5 F.3d 970, 975 (6th Cir. 1993). The Court's opinion leaves us with a bizarre conclusion: Efficiently allocating criminal justice resources and not adding the possibility of open-ended civil litigation to the prosecutor's docket could justify a prosecutor in seeking a release-dismissal agreement—an agreement that a prosecutor has *less* discretion to enter into than a guilty plea. Those *same* interests, however, "leave us to guess" whether a prosecutor *ever* has a "legitimate criminal-justice" interest in seeking a defendant's waiver of his

---

[2] Price's ex-wife did effectuate a waiver of her privacy rights, though she may have done so to keep the peace with Price—confident he could not obtain her records. The Court's opinion snatches that assurance away.

right to FOIA materials relating to his conviction and the underlying investigation.[3]  *See* Op. 10.

More fundamentally, nothing in the Supreme Court's guilty-plea-waiver jurisprudence—before or after *Rumery*—supports using Justice O'Connor's formulation to assess guilty pleas.  In the release-dismissal context, Justice O'Connor's assessment of "the relevant public interests" is considered "[t]he least-well defined element of a *Rumery* analysis." *Coughlen*, 5 F.3d at 975.  By importing it into a separate context, the Court's opinion only compounds the confusion.  To be sure, supplanting the Supreme Court's standards with Justice O'Connor's is not unprecedented.  *See, e.g.*, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 985 (1992) (Scalia, J., dissenting).  But transmuting the High Court's precedent—if it is to be done at all—is not in our job description.

**II.**

---

[3] On the subject of leaving us to guess, the Court's analysis asks us to presume its distinction with *every other case* that has ever addressed the acceptability of a guilty-plea FOIA waiver possesses a difference.  *See* Op. 5 n.4.  Nothing in the Court's analysis or in those opinions explain why those FOIA waivers are not susceptible to the same "legitimate criminal-justice" attack levied against Price's.  Perhaps the Court is unbothered by staking out a position in contrast with district courts outside our circuit and an unpublished decision of a sister circuit.  But when we start abrogating, *sub silentio*, the rulings of our circuit's district court,  *see, e.g.*, *School v. Various Agencies of the Federal Government*, No. 14-cv-1003, 2016 U.S. Dist. LEXIS 129421 (D.D.C. Sept. 22, 2016); *Thyer v. U.S. Dep't of Justice*, No. 12-cv-0606, 2013 U.S. Dist. LEXIS 4400 (D.D.C. Jan. 11, 2013); *Caston v. Exec. Office of U.S. Attorney's*, 527 F. Supp. 2d 125 (D.D.C. 2008), comity counsels clarity.

8

Because plea bargains are central to the functioning of the criminal justice system, achieving a guilty plea is *the* legitimate criminal justice interest behind a waiver that induces a bargain. *See, e.g.*, *Rumery*, 480 U.S. at 393 n.3 (majority opinion) ("[W]hen the State enters a plea bargain with a criminal defendant, it receives immediate and tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources. Also, the defendant's agreement to plead to some crime tends to ensure some satisfaction of the public's interest in the prosecution of crime and confirms that the prosecutor's charges have a basis in fact."); *Santobello v. New York*, 404 U.S. 257, 260 (1971) (characterizing plea bargaining as "an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities."). To be sure, courts "presuppose fairness" in plea negotiations. *Id.* at 261. But "fairness" in bargaining has never required the Government to set forth its reasons for pursuing each and every waiver from a particular defendant. Nor has "fairness" ever permitted a defendant to collaterally attack a guilty-plea waiver on the ground that the Government failed to identify a "legitimate criminal-justice" interest before the plea was accepted.

In summarizing the principles articulated at the start of the Supreme Court's modern guilty-plea-waiver jurisprudence, the Court said the following:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is

> charged, he may not thereafter raise
> independent claims relating to the deprivation
> of constitutional rights that occurred prior to the
> entry of the guilty plea. He may only attack the
> voluntary and intelligent character of the guilty
> plea . . . .

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

If today's reasoning applied to *Tollett*, achieving a guilty plea is a "legitimate criminal-justice" interest that can justify waiving the right to challenge *unconstitutional conduct* antecedent to the plea—but the same achievement is *not* a "legitimate criminal-justice" interest that can justify a limited FOIA waiver. This is implausible. If the interest in securing a guilty plea is sufficiently "legitimate" to sanction a blind eye toward constitutional violations, it must be sufficiently "legitimate" to allow Price to waive his FOIA right to records pertaining to his prosecution and the underlying criminal investigation. Prohibiting Price from burdening the Government with having to rifle through such records after he has knowingly, voluntarily, and intelligently pled guilty serves the same finality interest as waiving one's right to challenge any unconstitutional, antecedent Government conduct. By pleading guilty, Price has forgone the opportunity to put the Government to its proof by being presumed innocent, confronting accusers, or putting on his own evidence. Waiving his FOIA right to records pertaining to his prosecution and the underlying investigation is as sensible as waiving all of the other tools by which Price could have challenged the Government's prosecution.

The judiciary's permissive attitude toward the content of a plea bargain only makes sense if no "legitimate criminal-justice" interest need be satisfied beyond securing a knowing,

voluntary, and intelligent admission of guilt. "[T]he negotiation of a plea bargain is an act within a prosecutor's jurisdiction as a judicial officer," *Doe v. Phillips*, 81 F.3d 1204, 1210 (2d Cir. 1996), and, accordingly, "[t]he court must not participate in [plea agreement] discussions," FED. R. CRIM. P. 11(c)(1). The Supreme Court has approved of prosecutors "induc[ing] a guilty plea" by *overcharging* defendants, either in the original indictment or by "threaten[ing] to bring additional charges during plea negotiation[s]." *See United States v. Goodwin*, 457 U.S. 368, 378 n.10 (1982) (explaining *Bordenkircher v. Hayes*, 434 U.S. 357, 360–65 (1978)); *id.* at 378 ("The outcome in *Bordenkircher* was mandated by this Court's acceptance of plea negotiation as a legitimate process."); *see also Mabry v. Johnson*, 467 U.S. 504, 508 (1984). A prosecutor's interest in securing a guilty plea justifies withholding "material impeachment evidence prior to entering a plea agreement." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). Inducing a guilty plea is an interest of such importance to the criminal justice system that a plea may be secured without ensuring a defendant "correctly assess[ed] every relevant factor entering into his decision" to plead guilty. *Brady v. United States*, 397 U.S. 742, 757 (1970).[4]

While anyone is free to disapprove of these tactics,[5] or plea bargaining in general, our job as judges is to apply the law

---

[4] The Court is troubled by the prospect that a defendant's plea bargain could waive his entitlement to Social Security payments. *See* Op. 12. But the Ninth Circuit upheld a plea agreement even when the defendant was unaware that, by pleading guilty to the offense, he became ineligible for food stamps and Social Security benefits. *See United States v. Littlejohn*, 224 F.3d 960, 970–71 (9th Cir. 2000).

[5] By identifying off-putting ways in which a prosecutor may pursue a guilty plea, I intend no disparagement of the role of the prosecutor. Many may look askance at the demands placed on both prosecutors

as it stands. When overcharging defendants, withholding material information, and permitting defendants to misperceive the evidence against them are all acceptable means to achieve the "legitimate criminal-justice" objective of a knowing, voluntary, and intelligent guilty plea, it makes no sense to insist limited FOIA waivers require satisfying an *additional* "legitimate criminal-justice" interest.

Inducing Price to waive his FOIA right to records pertaining to his prosecution and its underlying investigation achieved a knowing, voluntary, and intelligent guilty plea. This is undisputed. Accordingly, "we [should] hesitate to elevate more diffused public interests above [Price]'s considered decision that he would benefit personally from the agreement." *See Rumery*, 480 U.S. at 395 (plurality opinion).

Of course, as has been remarked in other contexts, "a federal court is more than a 'recorder of contracts' from whom the parties can purchase [relief].'" *Local Number 93, Int'l Ass'n of Firefighters v. Cleveland*, 478 U.S. 501, 525 (1986); *cf. Keepseagle v. Perdue*, 856 F.3d 1039, 1065–66 (D.C. Cir. 2017) (Brown, J., dissenting). The "structural protections" provided by the criminal justice system cannot be circumvented simply by a defendant agreeing to waive them. *See Peretz v. United States*, 501 U.S. 923, 937 (1991); *see also United States v. Mezzanatto*, 513 U.S. 196, 204 (1995); *cf. United States v. Josefik*, 753 F.2d 585, 588 (7th Cir. 1985) ("[I]f the parties stipulated to trial by 12 orangutans the

---

*and* defense counsel to ensure the criminal justice system's integral components. *Cf. United States v. Wade*, 388 U.S. 218, 257–58 (1967) (White, Harlan, & Stewart, JJ., concurring in part, dissenting in part) (explaining that the central role of adversary presentation within our justice system "countenance[s] or require[s] conduct [of defense counsel] which in many instances has little, if any, relation to the search for truth").

defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept.").

When the nature of the right at issue is one that, if waived, would put the justice system's integrity at stake, no waiver—not even a knowing, voluntary, and intelligent one—is acceptable.  With this principle in mind, we have previously said that a waiver will not be enforced if, "in agreeing to the waiver," the defendant received ineffective assistance of counsel, or "if the sentencing court's failure in some material way to follow a prescribed sentencing procedure results in a miscarriage of justice," or if the sentence rested "on some constitutionally impermissible factor."  *United States v. Guillen*, 561 F.3d 527, 530–31 (D.C. Cir. 2009).  Similarly, the Supreme Court has prohibited prospective waiver under the Speedy Trial Act, *see Zedner v. United States*, 547 U.S. 489, 502–03 & n.5 (2006), as well as waiving the right to be present within Federal Rule of Criminal Procedure 43, *see Crosby v. United States*, 506 U.S. 255, 259–62 (1993).  *But*, when a right does *not* implicate the structural protections of the criminal justice system, it is susceptible to waiver—and the waiver will be upheld if it is knowing, voluntary, and intelligent.  *Cf. Guillen*, 561 F.3d at 530 (explaining why the right to appeal one's sentence may be waived; "his waiver relieves neither his attorney nor the district court of their obligations to satisfy applicable constitutional requirements").

Applying this principle here, Price's FOIA waiver does not threaten the legitimacy of the criminal justice system.  He had the benefit of the criminal discovery process, received (and approved) a detailed factual recitation within his guilty plea, and he retains the right to FOIA materials outside the investigation and prosecution of his case.  Though Price's

public policy arguments against FOIA waivers make much of FOIA's allegedly helpful role in identifying prosecutorial misconduct,[6] it is hard to believe a miscarriage of justice could be so subtle that *only* a FOIA request—one still subject to that statute's nine disclosure exceptions, mind you—would reveal it. Nothing about the criminal justice system's structural integrity is risked by this limited waiver of Price's FOIA rights.

## III.

Today's opinion will not be cabined by the majority's insistence that this is a "FOIA suit." Nor will the ban on FOIA waivers only apply to the public policy harms Price has identified and "[t]hat's it." Op. 14. The analytical framework adopted in place of traditional waiver analysis is too tempting to ignore. Every criminal defense lawyer worth his salt will wonder why the Government should not be tasked with showing a "legitimate criminal-justice" interest served with each and every right waived by a guilty plea. This will overhaul the plea process.

---

[6] The Court belabors FOIA's alleged help in identifying *Brady* violations. But, at least two circuits have suggested a guilty plea may not be invalidated even when the prosecutor fails to disclose exculpatory evidence at the guilty-plea stage. *See, e.g.*, *United States v. Moussaoui*, 591 F.3d 263, 285–86 (4th Cir. 2010) (declining, however, to resolve the question); *Matthew v. Johnson*, 201 F.3d 353, 361 (5th Cir. 2000) ("The *Brady* rule's focus on protecting the integrity of trials suggests that where no trial is to occur, there may be no constitutional violation."). To be sure, the great weight of the circuits do not accept this suggestion. *See, e.g,. United States v. Nelson*, 979 F. Supp. 2d 123, 129 (D.D.C. 2013) (collecting cases). But no court rejecting this suggestion—let alone the courts embracing it—rely on Justice O'Connor's "legitimate criminal-justice" interest language.

Federal Rule of Criminal Procedure 11 requires courts to "consider . . . the public interest" before accepting *nolo contendere* pleas—*not* guilty pleas. *See* FED. R. CRIM. P. 11(a)(3). This makes sense, as no admission of guilt is secured in a *nolo contendere* plea while the defendant is still subjected to a conviction. Whereas, when a defendant knowingly, voluntarily, and intelligently admits his guilt under oath, the public interest in convicting the actually guilty is secured. But after today, Rule 11's sensible refusal to impose the same, case-by-case, "public interest" analysis of guilty pleas will no longer govern. Now, the "public interest" will be specifically addressed by considering the "legitimate criminal-justice" interest behind each and every waiver. This will turn the Rule 11 colloquy into a conference where the Government, not the defendant, takes center stage. *But see* FED. R. CRIM. P. 11(b) (setting forth the colloquy as an exchange *between the court and the defendant* regarding material aspects of the plea). Of course, defendants will want to rebut the Government's asserted interests. But how could a meaningful rebuttal occur without discovery? So much for Rule 11's command that "[t]he court must not participate in [plea agreement] discussions." FED. R. CRIM P. 11(c)(1). Instead, courts will be asked to facilitate information-sharing on why the Government sought certain waivers. Far from keeping the wheels of justice turning, today's decision ensures guilty pleas will bring the system to a screeching halt. And for what? For any of the rights our Founders deemed so essential that the Constitution of the United States was conditioned upon their explicit inclusion within the Bill of Rights? No—for a '60's-era statutory right that often results in the Government releasing more black-Sharpie ink than records disclosing investigative information. I respectfully dissent.